357 S.E.2d 43

**John KENNEDY**

v.

**Hon. John R. FRAZIER, Judge, etc.**

**No. 17501.**

Supreme Court of Appeals of West Virginia.

March 18, 1987.

Rehearing Denied June 3, 1987.

David C. Smith, Princeton, for appellant.

Charles G. Brown, Atty. Gen., David W. Johnson, Asst. Atty. Gen., Charleston, for appellees.

NEELY, Justice:

The petitioner, John Kennedy, was indicted on a two count indictment. Petitioner and the prosecuting attorney entered into a plea agreement under which petitioner would plead guilty to delivery of marijuana in return for dismissal of a second charge, delivery of oxycodone. In addition to dismissal of the second charge, the prosecution also agreed not to seek an enhanced sentence under *W. Va. Code,* 61–11–18 [1943], or *W. Va. Code,* 60A–4–408 [1971].

The petitioner and his counsel first presented the plea agreement to the respondent judge on 25 September 1986, but at that time the respondent remanded the petitioner to a mental health facility to determine whether respondent was under the influence of drugs. Petitioner presented the plea agreement to the respondent again on 10 October 1986. At the 10 October hearing petitioner indicated that he was guilty and his counsel represented to the court that there were no meritorious defenses. The judge found the guilty plea to be voluntarily and intelligently given, and referred the matter to the probation department for a pre-sentence investigation. During this hearing no mention was made of possible police misconduct.

The pre-sentence investigation was submitted to the court on 22 October 1986 and this report included statements by petitioner indicating that he had been entrapped, and that improper sexual advances had been made toward him by a police officer. Specifically, the pre-sentence report said:

I interviewed John Kennedy at the Mercer County Jail on October 17, 1986. He states that this was the 7th or 8th time that Detective Staton and Beverly Wallace had been to his house. He states that the first time they came he told them he did not sell drugs anymore. The 5th or 6th time they came, John states that he told Staton and Wallace he could take them to Princeton and introduce them to a cocaine supplier. He says they were not interested.

John states that he no longer sold drugs and only had in his possession marijuana and Tylox for his personal usage. He states that Staton and Wallace pressured him so much to sell to them that he finally gave in and sold the marijuana and Tylox from his personal supply. John further stated that Beverly Wallace was making inappropriate sexual advances toward him in order to get him to sell the drugs. He states he was fearful of further incident at his home if he did not agree to make the transaction.

Based upon this report, a hearing was held on 24 October 1986, at which the respondent judge rejected the plea agreement and scheduled the matter for trial over petitioner's strenuous objection. During this hearing the court gave the following reasons for his decisions:

The last case I have on my calendar before we start the trial is State versus John Kennedy. Let the record show that Mr. Kennedy is here today with his attorney, Mr. David Smith. Mr. Knight represents the State.

Let me say, before we get into this at all, that I have received a copy of the presentence report, that under the defendant's version—Mr. Knight, I don't know if you've had a chance—Mr. Stevens, you might confer there with Mr. Knight on this matter—that under the defendant's version, pretty much, Mr. Kennedy is saying that he didn't want to make these sales, that he resisted continuously, that he was pressured significantly by the police to the—including the extent that the undercover agent made sexual offers to him to get him to sell these drugs.

And under those circumstances, it wouldn't appear proper—but I'll hear counsel on this before I make any final decision whether to accept the plea agreement or not. But under those circumstances, it certainly gives the Court considerable pause as to whether to accept the plea agreement or not.

The trial court also stated:

Well, of course, you with your experience are familiar with the defense of entrapment. That sets a pretty good defense in his statement there. Of course, we're not—you know, I'm familiar with the Alfred (sic) decision but, of course, the test in West Virginia is the Myers vs. Losch and Frazier decision, whether in the public interest and the fair administration of justice the Court should accept this plea agreement.

The Court doesn't find the plea agreement—with his very strong, very adamant position that he was coerced into making these buys by extreme pressure by officers and the undercover agent—and under those circumstances, the Court doesn't feel that the public interest

and the fair administration of justice would be served.

As you pointed out, in all likelihood he would receive some sort of sentence in this case. It's not my desire to send somebody to the penitentiary who is not guilty, who has been pressured, under the circumstances that he alleges in his statement there, by the police officers.

 Under the facts of this case we find that the trial court abused his discretion when he rejected the plea agreement in order to vindicate the *defendant's* rights. The case of *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) stands for the proposition that a guilty plea that represents a voluntary and intelligent choice among the alternatives available to a defendant is not coerced within the meaning of the Fifth Amendment simply because it was entered into to avoid the possibility of a significantly higher penalty. The Supreme Court held that there is no bar to imposing a prison sentence upon an accused who is unwilling to admit guilt but who is willing to waive trial and accept the sentence. An accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him.

In *Myers v. Frazier*, 173 W.Va. 658, 319 S.E.2d 782 (1984) we held in syllabus points 4, 5, and 6 as follows:

4. A court's ultimate discretion in accepting or rejecting a plea agreement is whether it is consistent with the public interest in the fair administration of justice.

5. As to what is meant by a plea bargain being in the public interest in the fair administration of justice, there is the initial consideration that the plea bargain must be found to have been voluntarily and intelligently entered into by the defendant and that there is a factual basis for his guilty plea. Rule 11(d) and (f). In addition to these factors, which inure

to the defendant's benefit, we believe that consideration must be given not only to the general public's perception that crimes should be prosecuted but to the interests of the victim as well.

6. A primary test to determine whether a plea bargain should be accepted or rejected is in light of the entire criminal event and given the defendant's prior criminal record whether the plea bargain enables the court to dispose of the case in a manner commensurate with the seriousness of the criminal charges and the character and background of the defendant.

The law enunciated in *Myers v. Frazier, supra,* protects the interests of the public; plea agreements that are overly lenient in sentencing perpetrators of heinous crimes confound the public's expectation that crimes will be prosecuted and are not fair to the victims. In the case before us, however, the trial court did not reject the plea agreement because the probation report demonstrated lack of adequate contrition on petitioner's part and the plea agreement did not adequately protect the public. Had the judge assigned these reasons, his decision would have been within the permissible discretion allowed by Rule 11(e)(2), *West Virginia Rules of Criminal Procedure,* and our holding in *Myers, supra.*

 In this case the court's reasons for rejecting the plea agreement were that the defendant *might,* indeed, prevail on the merits. The petitioner argues that although he *might* prevail on the merits, there is also a significant probability that he will be convicted of two felonies and suffer further sentence enhancement under *W.Va.Code,* 61–11–18 [1943] and 60A–4–408 [1971]. In such circumstances, it is for the defendant, after proper consultation with competent counsel, to determine whether to roll the dice and go to a jury. Although a judge would be remiss to accept a guilty plea under circumstances where the weight of the evidence indicates a complete lack of guilt, a court "should not 'force any defense on a defendant in a criminal case,' particularly when advancement of the defense might 'end in disas-

ter'...." *North Carolina v. Alford, supra,* quoting *Tremblay v. Overholser,* 199 F.Supp. 569, 570 (D.C.1961).

Experience teaches that the defense of entrapment is a slender reed on which to lean a defendant's defense. Entrapment so serious as to amount to a question of law, of course, would allow the judge alone to dismiss the case. But when a jury must pass on the entrapment issue, a defendant is well advised to make a conservative estimate of his chances of acquittal on that ground. The judge should not substitute his weighing of alternatives for the defendant's properly counseled weighing of the same alternatives.

In *Alford, supra,* the Supreme Court cited with approval numerous federal and state cases that generally stand for the proposition that reasons other than the fact that he is guilty may induce a defendant to plead, and he must be permitted to judge for himself in this respect. Because guilt, or the degree of guilt, is at times uncertain and elusive, an accused, though believing in or entertaining doubts respecting his innocence, might reasonably conclude a jury would be convinced of his guilt and that he would fare better in the sentence by pleading guilty.

Therefore, in light of the judge's stated reasons for rejecting petitioner's plea, we find that the petitioner has demonstrated grounds for issuance of a writ of prohibition under the criteria enunciated in *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979). Accordingly the writ of prohibition for which petitioner prays is awarded and the case is remanded to the Circuit Court of Mercer County for further proceedings consistent with this opinion.

Writ awarded

Case remanded for further proceedings.