# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 14-0133** (Cabell County 10-F-362)

**Michael Austin S.**
**Defendant Below, Petitioner**

**FILED**
**November 19, 2015**
**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The petitioner, Michael Austin S.,[1] by counsel George Castelle, appeals the circuit court's order entered January 21, 2014, which denied the petitioner's motion to correct his sentence for convictions of various sexual offenses. Specifically, the circuit court rejected the petitioner's request to delete the sentencing provision placing him on supervised release for a term of fifty years. The State of West Virginia appeared by counsel Misha Tseytlin, J. Zak Ritchie, and Gilbert Dickey.

This Court has considered the parties' briefs, their oral arguments, and the record on appeal. Upon consideration of the standard of review, the briefs and arguments, and the record presented, the Court discerns no substantial question of law and no prejudicial error. Consequently, a memorandum decision affirming the order of the circuit court is the appropriate disposition pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

The grand jury returned an indictment against the petitioner on December 9, 2010, charging him in Counts I and III with first-degree sexual assault, *see* W. Va. Code § 61-8B-3 (2006), and in Counts II and IV with sexual abuse by a parent or custodian, *see id.* § 61-8D-5 (2010). The two victims were the petitioner's stepdaughters, whom he had

---

[1] Consistently with our long-standing practice, we endeavor to protect the identity of the juvenile victims in this sensitive matter by refraining from referring to the petitioner by his surname. *See, e.g.*, *Matter of Jonathan P.*, 182 W. Va. 302, 303 n.1, 387 S.E.2d 537, 538 n.1 (1989).

allegedly subjected to his predations over a four-year period ending in the summer of 2010, when the girls were seven and nine, respectively.

The petitioner came to an agreement with the State whereby he consented to plead guilty to lesser charges without acknowledging his culpability. *See* syl. pt. 1, *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987) ("An accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him."); *cf. North Carolina v. Alford*, 400 U.S. 25 (1970) (detailing the analogous federal precedent). In exchange for the guilty plea, the State acceded to the petitioner's request for certain considerations bearing on his sentencing. Perhaps most significantly, the State agreed to forbear from seeking a recidivist enhancement based on the petitioner's convictions some ten years earlier for armed robbery, aggravated robbery, and engaging in a fraudulent scheme. *See* W. Va. Code § 61-11-18(c) (2000) (specifying that a person convicted of a felony who "shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary . . . shall be sentenced to be confined . . . for life").

The record does not disclose any written agreement between the parties in advance of the plea hearing convened by the circuit court on January 10, 2012. At that hearing, the following discussion ensued:

> THE COURT: Put on the record what the plea is.
>
> PROSECUTOR: [The petitioner] is going to enter an *Alford* plea to attempt to commit a felony, a lesser included offense of Count I; attempt to commit a felony, a lesser included offense to Count II; and attempt to commit a felony, a lesser included offense of Count III.
>
> He is to receive a one- to three-year sentence on Count I, a one- to three-year sentence on Count II, a one- to three-year sentence on Count III consecutive. He also stipulates that he will not petition for parole, that he will just serve out the max of his sentence.
>
> * * *
>
> [H]e will be required by the State of West Virginia to register for life [on the sex-offenders registry]. . . . And then *he is also subjected to enhanced supervision* at the discretion of the Court for a period to be determined by the Court upon his

2

release.  The other count in the indictment will be dismissed pursuant to the plea, and the state will not seek —

THE COURT:  That's Count IV?

PROSECUTOR:  Yes, sir.  And the state will not seek recidivist action against [the petitioner].

(Emphasis added).  Later at the hearing, amidst the required plea colloquy with the petitioner himself, the court inquired of the prosecutor of the particular requirements with respect to sex offenders.  The prosecutor responded:

I believe that there are actually two sets of requirements.  There is one set of requirements to be in compliance with the registration state and federal, and then there are some additional terms and conditions that the State of West Virginia imposes on individuals that[ are] *contained in their terms and conditions of supervised release*.

(Emphasis added).  Subsequently, in response to another inquiry from the court, the prosecutor clarified that "Count I and Count III are mandatorily noted as registerable offenses."  Then, the parties specifically focused on supervised release:

DEFENSE COUNSEL:  Judge, there are terms and conditions of supervised release that [the prosecutor] has given me that I have not gone over with [the petitioner].  I have gone over the things we just talked about, but the document he just gave me I don't think I have seen.

PROSECUTOR:  That's the one I gave you yesterday.

DEFENSE COUNSEL:  Well, maybe I didn't go over it with him.

PROSECUTOR:  We were thinking that, since the Court would not have to read all seven pages on the record, if he's gone over it with him and he acknowledges that.

DEFENSE COUNSEL:  Do you remember going over that?

PETITIONER:  *Yes, we went over that.*

3

                                      * * *
        THE COURT:       Let me have the list, and let's make sure
        it's on the record. . . .  Well, do I need to go over this before I
        accept his plea or after I accept his plea?

        PROSECUTOR:      I believe that's something that is done at
        the time of sentencing, so it's after acceptance of the plea.

        THE COURT:       We will hold off for a minute.

(Emphasis added).

        The prosecutor proceeded to recite the factual basis supporting the plea, detailing
the conduct underlying the offenses charged in the indictment.  Upon obtaining
confirmation from the petitioner's counsel below that the proffered facts would support a
guilty verdict, the circuit court asked the petitioner to review and sign the pages of a form
titled "Questions Relative to Entry of Plea of Guilty" (the "Questions Form") that his
counsel had previously undertaken to complete.  The petitioner complied.  Question 50
required a handwritten description of any plea agreement.  The petitioner's counsel below
provided the following summary:

        Plea to attempt to commit a felony, lesser included offenses
        of counts 1-3, Defendant agrees to waive [presentencing
        investigation] and be sentenced to three consecutive 1-3 year
        sentences and defendant agrees to waive parole eligibility.
        State [to] dismiss remaining count and agrees not to pursue
        recidivist.

The circuit court found that the petitioner had entered his plea knowingly, intelligently,
and voluntarily, and, because the petitioner had waived preparation of the presentencing
report, the court immediately moved on to sentencing.  After imposing the agreed-upon
cumulative term of imprisonment totaling three to nine years, the court directed that the
petitioner serve a fifty-year term of supervised release, detailing on the record each
condition thereof.  The court's recitation exceeded eight transcribed pages, after which
the petitioner affirmatively indicated his understanding of the terms of the supervised
release.  The petitioner specifically acknowledged the court's admonition that "if you
violate the terms and conditions of this you can be returned to prison for up to 50 years."

        The circuit court memorialized its rulings at the consolidated hearing in four
distinct orders, including its "Sentencing Order and Order Committing Defendant to
Custody of Commissioner of the West Virginia Division of Corrections and Imposing
Term of Supervised Release," filed January 13, 2012 (the "Sentencing Order"), and the

                                        4

predicate Guilty Plea Order (the "Plea Order") that was nonetheless entered thereafter, on January 17, 2012.  In the Plea Order, the court adjudged the petitioner

> guilty of felony offense of Attempt to Commit a Felony, a lesser included offense of 1st Degree Sexual Assault as contained in Count I of the Indictment in this case; upon conviction for the felony offense of Attempt to Commit a Felony, a lesser included offense of Sexual Abuse by a Parent, Guardian or Custodian, as contained in Count II of the Indictment in this case; and upon conviction for the felony offense of Attempt to Commit a Felony, a lesser included offense of 1st Degree Sexual Assault, as contained in Count III of the Indictment.

Neither the Plea Order nor the first-filed Order of Commitment (the "Commitment Order"), entered January 10, 2012, mention supervised release.  The Sentencing Order, however, at length exceeding six pages of double-spaced print, set forth the terms and conditions of the fifty-year term of supervised release therein imposed, after first confirming the circuit court's oral ruling that the petitioner would be imprisoned for one to three years on each of his three felony convictions for "lesser included" offenses of those charged, "for a total term of incarceration of not less than three (3) years nor more than nine (9) years."

Soon thereafter, on January 23, 2012, the circuit court docketed the fourth of its dispositive orders, titled "Order of Terms and Conditions of Probation" (the "Probation Order").  The Probation Order, bearing the signatures of the petitioner, his counsel, the circuit judge, and the probation officer, recounted once more that the petitioner had "been placed on extended probation at the completion of your sentence for fifty (50) years," enumerating forty-five discrete stipulations for him to fulfill in order to avoid returning to prison.[2]  The petitioner filed no appeal from or otherwise objected to or took exception to any aspect of his sentencing.

---

[2] Those stipulations included the statutory requirement that the petitioner refrain from "[e]stablishing a residence or accepting employment within one thousand feet of a school or child care facility," W. Va. Code § 62-12-26(b)(1) (2015), together with, *inter alia*, restrictions on out-of-state travel, possession of firearms, consumption of alcoholic beverages, association with felons and fellow probationers, and intimate relationships with persons who have children less than eighteen years of age.

Notwithstanding the prolonged discussion of supervised release during the consolidated hearing on January 10, 2012, the terms of which were memorialized shortly thereafter in the conforming written orders, the petitioner, proceeding *pro se*, filed a motion for correction of sentence on December 6, 2013. *See* W. Va. R. Crim. P. 35(a) (providing that the circuit court "may correct an illegal sentence at any time"). Therein, the petitioner requested that his sentence be amended "to reflect that the defendant will have no period of supervised release because W. Va. Code § 62-12-26 does not contemplate a person convicted of violating W. Va. Code § 61-11-8 (attempting to commit a felony) having to serve any period of supervised release."[3]

By its order of January 21, 2014, the circuit court denied the petitioner's motion. In so ruling, the court acknowledged that "[t]he defendant is correct that . . . supervised release is not part of the requirements for pleading guilty to Attempt to Commit a Felony charges." The court recalled its finding in the Sentencing Order, however, that the petitioner was sexually motivated in committing the offenses of conviction, explaining that the circuit court "would not have accepted the defendant's guilty plea to these charges, due to the defendant's motivation for committing these crimes, unless the

---

[3] Section 62-12-26 commands at the threshold that "any defendant convicted . . . of a violation of [W. Va. Code § 61-8-12] or a felony violation of the provisions of article eight-b, eight-c or eight-d of said chapter shall . . . be required to serve . . . a period of supervised release of up to fifty years." W. Va. Code § 62-12-26(a) (2015). Section 61-8-12 proscribes incest, while the referenced articles of Chapter 62 relate to, respectively, substantive sexual offenses (including sexual assault, of which the petitioner was accused in Counts I and III of his indictment); the filming of minors in sexually explicit conduct; and child abuse (including sexual abuse by a parent, guardian, or custodian, which was the underpinning of Count II).

We would be remiss if we neglected to mention that the petitioner necessarily mischaracterizes his convictions as being "of violating W. Va. Code § 61-11-8." The so-called "attempt statute" prescribes various degrees of punishment for "[e]very person who attempts to commit an offense, but fails to commit or is prevented from committing it," unless the attempt is elsewhere criminalized by a more specific provision relating to the particular substantive offense. The attempt statute does not itself describe a criminal offense. *State v. Starkey*, 161 W. Va. 517, 522 n.2, 244 S.E.2d 219, 223 n.2 (1978) ("'The crime of attempt does not exist in the abstract but rather exists only in relation to other offenses.'" (quoting W. LaFave & A. Scott, Handbook on Criminal Law 49 (1972))), *overruled on other grounds by State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

defendant consented to registering on the Sex Offender Registry and a period of supervised release." *See* W. Va. Code § 15-12-2(c) (2012) (requiring registration as a sex offender for "[a]ny person who has been convicted of a criminal offense," with respect to which "the sentencing judge made a written finding that the offense was sexually motivated").[4]

The petitioner noticed the instant appeal on February 14, 2014, pursuant to which this Court appointed him counsel, directed supplemental briefing, and scheduled argument. On February 26, 2015, the petitioner was released from custody, having fulfilled his sentence of imprisonment by serving approximately four and one-half years since his 2010 arrest.

We acknowledge the applicable standards under which we review the circuit court's denial order:

> In reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules of Criminal Procedure, we apply a three-pronged standard of review. We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review.

Syl. pt. 1, *State v. Head*, 198 W. Va. 298, 480 S.E.2d 506 (1996). Moreover, "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

Although Rule 35(a) allows for the correction of an illegal sentence by the circuit court "at any time," it does not follow that the mere making of a Rule 35(a) motion requires the court to deconstruct its prior ruling where the factual and legal bases for the

---

[4] No similar written finding is necessary regarding certain offenses that are inherently sexually motivated, including those for which the petitioner was indicted. *See* W. Va. Code § 15-12-2(b)(2) (2012) (requiring registration for convictions under Article 8B of Chapter 61), *id.* § 15-12-2(b)(4) (mandatory registration imposed for, *inter alia*, convictions pursuant to W. Va. Code § 61-8D-5 or § 61-8D-6).

motion should have been apparent at the time of sentencing or reasonably thereafter, particularly if the purported illegality is not manifest from the record.[5]  The petitioner here waited for nearly two years following the imposition of his sentence to move the circuit court to correct it, with nothing having occurred to justify such a delay other than the petitioner's lately acquired epiphany as he neared the completion of his prison term that the plea agreement to which he had agreed and from which he had benefited would soon subject him to an extended term of supervised release.

The petitioner's protestations of ignorance ring hollow.  From the record, we observe:  (1) the prosecutor's statements in open court that the petitioner was subject to "enhanced supervision" and certain "terms and conditions of supervised release"; (2) the petitioner's personal acknowledgment on the record that he had gone over those terms and conditions with counsel; (3) the petitioner's assent to the circuit court's explanation of those terms and conditions during the sentencing portion of the consolidated hearing, at which point the court could have easily revisited the guilty plea had it been informed of any misgivings; and (4) the clear language of the several orders memorializing the supervised release aspect of the circuit court's judgment.  Put simply, the petitioner's after-the-fact assertions are not credible.  They fail to negate the persuasive affirmative indicia of the parties' mutual understanding and intent at the time of their agreement.

Moreover, no sentencing error or illegality is manifest from the record.  The parties, represented by counsel, engaged in arms-length negotiations to forgo trial and reach an agreement whereby the petitioner obtained the following benefits:  (1) that he would be convicted of three charges, rather than the four counts contained in the indictment; (2) that he would not plead to the specific charges returned by the grand jury, but rather would plead guilty to lesser-included offenses carrying a shorter term of imprisonment; and (3) that he would avoid an enhanced sentence for recidivism.  In return, the State assured itself:  (1) that the petitioner would be convicted and imprisoned as a matter of certainty; (2) that, after the petitioner was released from prison, the public would gain a measure of protection by virtue of his lifetime registration as a sex offender; and (3) that the public would be further protected as the result of the petitioner's compliance with a fifty-year term of supervised release.[6]  The petitioner's sentencing in

---

[5] The federal analog to our rule provides that a "court may correct a sentence that resulted from arithmetical, technical, or other clear error," but only "[w]ithin 14 days after sentencing."  Fed. R. Crim. P. 35(a).

[6] We also observe that, because of the plea agreement, the infant step-daughters were not required to testify at trial.

all respects appears to have conformed to the parties' negotiated agreement. Having received all of the benefits from the agreement he negotiated and agreed to, the petitioner ought not now be heard to complain of his bargain. His time to object was at the time of the sentencing, not some two years later.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED: November 19, 2015**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

9