# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Leonard Braynen, Jr.,**
**Petitioner Below, Petitioner**

**vs) No. 15-0334**      (Ohio County 10-C-138)

**Marvin Plumley, Warden,**
**Huttonsville Correctional Center,**
**Respondent Below, Respondent**

**FILED**

**April 8, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Leonard Braynen, Jr., by counsel Christopher Alan Scheetz, appeals the March 7, 2015, order of the Circuit Court of Ohio County that denied his petition for writ of habeas corpus following his guilty plea to one count of sexual assault in the second degree. Respondent Marvin Plumley, Warden, Huttonsville Correctional Center, by counsel Laura Young, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 3, 2009, petitioner drove a group of college students to Oglebay Park in Ohio County for a fraternity formal. The victim, who was a passenger in one of the two party buses, consumed too much alcohol on the ride and fell asleep in a cabin once they arrived. Her friends checked on her throughout the night. At one point, one of her friends observed petitioner leaving the room where the victim was sleeping. When she turned on the light, the victim stirred and exclaimed, "What happened? Someone just raped me!" When confronted by the students, petitioner admitted being in the victim's room, but denied that he sexually assaulted her.

During the investigation by the Ohio County Sheriff's Department, petitioner spoke with officers after being given *Miranda*[1] warnings and signing a waiver. It is undisputed that petitioner also consented to provide biological and physical evidence. A search warrant was also obtained to collect the same evidence. The victim's DNA was found on petitioner's penis.

Petitioner was thereafter indicted on two counts of second-degree sexual assault.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

1

According to the the habeas order, a *McGinnis*[2] hearing was held to determine the admissibility of Rule 404(b) evidence that showed petitioner had previously assaulted another woman who was incapacitated due to intoxication.[3] In that case, petitioner had driven the victim and others on a party bus and assaulted the victim when she passed out on the bus. The State also presented evidence of a prior conviction in the State of Ohio for indecent exposure. The trial court ruled that the foregoing evidence was admissible in the instant case.

On November 9, 2009, petitioner entered an *Alford/Kennedy* plea[4] to one count of the indictment and was sentenced to ten to twenty years of incarceration. Petitioner subsequently filed a petition for a writ of habeas corpus, which was denied by order entered March 17, 2015.[5] This appeal followed.

This Court reviews an order that denies a petition for writ of habeas corpus under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). This Court has further stated that

> [h]abeas corpus serves as a collateral attack upon a conviction under the claim that the conviction was obtained in violation of the state or federal constitution. While our legislature, through the enactment of W.Va.Code, 1931, 53-4A-1 through 11, as amended has provided a broad and effective post-conviction review, we still maintain a distinction, so far as post-conviction remedy is concerned, between plain error in a trial and error of constitutional dimensions. Only the latter can be a proper subject of a habeas corpus proceeding. As succinctly expressed in Point No. 4 of the Syllabus of *State ex rel. McMannis v. Mohn*, [163] W.Va. [129], 254 S.E.2d 805 (1979): "A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed."

---

[2] *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).

[3] Neither a copy of the State's Rule 404(b) motion nor the transcript of the *McGinnis* hearing were included in the appendix record on appeal.

[4] *See North Carolina v. Alford*, 400 U.S. 25 (1970), and *Kennedy v. Frazier*, 178 W.Va. 10, 357 S.E.2d 43 (1987).

[5] Petitioner has not filed a direct appeal of his conviction.

*Edwards v. Leverette*, 163 W.Va. 571, 576, 258 S.E.2d 436, 439 (1979).

Petitioner avers that he is a citizen of the Bahamas.[6] He argues that the State of West Virginia violated Article 36 of the Vienna Convention on Consular Relations ("Convention") by failing to advise him of his right to notify the Bahamian Consulate of his arrest and detention and by further failing to contact the consulate on petitioner's behalf.[7] Petitioner argues that the circuit court erred in denying his request for habeas relief because such violations—either separately or in tandem with the above-described and allegedly erroneous Rule 404(b) ruling—made petitioner's guilty plea unknowing, coerced, and involuntary. We find no error.

As explained in *Sanchez-Llamas v. Oregon*,

Article 36 of the Convention[8] concerns consular officers' access to their nationals detained by authorities in a foreign country. The article provides that "if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner." Art. 36(1)(b), *id.*, at 101. In other words, when a national of one country is detained by authorities in another, the authorities must notify the consular officers of the detainee's home country if the detainee so requests. Article 36(1)(b) further states that "[t]he said authorities shall inform the person concerned [*i.e.*, the detainee] without delay of his rights under this sub-paragraph." *Ibid.*

548 U.S. 331, 338-39 (2006). (Footnotes omitted and added).

Petitioner argues that because he consented to a search of his person without the benefit of consular service (or knowing that such a service was potentially available to him), his consent was not knowingly and voluntarily given and, thus, this Court should invoke the exclusionary rule to exclude the biological samples obtained in connection with the search of his person. *See State v. Clark*, 232 W.Va. 480, 492-93, 752 S.E.2d 907, 919-20 (2013) (reiterating that "'[w]hen evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure.' *Illinois v. Krull,* 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987).").

---

[6]Aside from petitioner's assertion in this regard, there is no evidence that petitioner is, in fact, a Bahamian national. Nonetheless, given petitioner's argument, this Court, as did the circuit court, will consider this assertion to be true for purposes of this appeal.

[7] For purposes of this appeal only, the Court takes as true petitioner's assertion that the Bahamian Consulate was not advised of his arrest and detention. We note, however, that there is no evidence in the record as to whether the consulate was or was not advised in this regard.

[8] The United States and the Bahamas are signatories to the Convention.

We reject petitioner's argument. As the Supreme Court noted in *Sanchez–Llamas*, "[t]he Convention does not prescribe specific remedies for violations of Article 36. Rather, it expressly leaves the implementation of Article 36 to domestic law: Rights under Article 36 are to 'be exercised in conformity with the laws and regulations of the receiving State.' Art. 36(2), 21 U.S.T., at 101." 548 U.S. at 343. Moreover,

> [t]he violation of the right to consular notification . . . is at best remotely connected to the gathering of evidence. . . . [Article 36] secures only a right of foreign nationals to have their consulate *informed* of their arrest or detention—not to have their consulate intervene, or to have law enforcement authorities cease their investigation pending any such notice or intervention. In most circumstances, there is likely to be little connection between an Article 36 violation and evidence or statements obtained by police.

548 U.S. at 349. Thus, "[s]uppression would be a vastly disproportionate remedy for an Article 36 violation." 548 U.S. at 349. Despite this clear rejection of suppression as an appropriate remedy, petitioner contends, in a rather convoluted argument, that this Court should, nonetheless, adopt the contrary view and apply the exclusionary rule in this case. In so arguing, petitioner relies solely on the observation in *Sanchez-Llamas* that

> [a] defendant can raise an Article 36 claim as part of a broader challenge to the voluntariness of his statements to police. If he raises an Article 36 violation at trial, a court can make appropriate accommodations to ensure that the defendant secures, to the extent possible, the benefits of consular assistance.

548 U.S. at 350. The Court is unpersuaded that this language in any way supports suppression of the evidence. In light of the foregoing, the Court concludes that the circuit court did not abuse its discretion in refusing to apply the exclusionary rule in this case.[9]

Finally, for the same reasons petitioner claims that his consent to the search of his person was not knowingly and voluntarily given, petitioner also argues that his guilty plea was not knowingly and voluntarily entered. Thus, petitioner argues that he should be permitted to withdraw his guilty plea. Suffice it to say that petitioner offers no legal authority in support of such a drastic remedy and, indeed, common sense dictates that if the exclusionary rule is not an appropriate remedy for an alleged Article 36 violation, it logically follows that withdrawal of a

---

[9] The Court would be remiss not to emphasize that, even if petitioner's consent to the search of his person was not knowingly and voluntarily given because of an alleged violation of Article 36, the record is clear that the State obtained a search warrant to obtain the same biological evidence from, among other things, petitioner's penis. The appendix record demonstrates that petitioner's consent and the search warrant were obtained on the same day, April 4, 2009. Petitioner does not claim that the warrant was unlawfully obtained. Furthermore, it is undisputed that petitioner was twice advised of his *Miranda* rights during the investigative process. Given these facts, it is not surprising that petitioner fails to claim that the alleged violation of Article 36 had any impact on the outcome of this case.

guilty plea is, likewise, not appropriate.[10]

For the foregoing reasons, we affirm.[11]

Affirmed.

**ISSUED:  April 8, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

---

[10] As previously noted, petitioner argues that the circuit court erred in denying his request for habeas relief based upon the alleged Article 36 violation alone or in combination with the allegedly erroneous Rule 404(b) ruling regarding a prior assault on an intoxicated party bus passenger and an indecent exposure conviction. Petitioner does not argue that the 404(b) ruling is constitutional in nature or, standing alone, constitutes sufficient grounds for reversal of the circuit court's habeas order. Given our conclusion that the circuit court did not err with respect to the alleged Article 36 violation, we need not address the propriety of the court's 404(b) ruling. *See Hatcher v. McBride*, 221 W.Va. 5, 11, 650 S.E.2d 104, 110 (2006) (stating that "[s]tate court evidentiary rulings respecting the admission of evidence are cognizable in habeas corpus only to the extent they violate specific constitutional provisions or are so egregious as to render the entire trial fundamentally unfair and thereby violate due process under the Fourteenth Amendment.").

[11] In the habeas proceeding below, petitioner argued that he received ineffective assistance of counsel because defense counsel failed to inform him of his rights under the Convention or to contact the Bahamian Consulate on petitioner's behalf. The circuit court rejected this argument. Petitioner does not appeal the circuit court's ruling that petitioner's counsel was not ineffective.