# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-0946** (Upshur County 18-F-10)

**Steven John Kacenski,**
**Defendant Below, Petitioner**

**FILED**

**January 17, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Steven John Kacenski, by counsel Brian W. Bailey, appeals the Circuit Court of Upshur County's September 5, 2018, order sentencing him to not less than one nor more than five years of incarceration following the entry of his *Kennedy* plea to one count of delivery of a controlled substance.[1] The State of West Virginia, by counsel Caleb A. Ellis, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion to suppress when the arresting officer lacked jurisdiction to arrest him and when the investigation and arrest were based upon an incredible, unreliable confidential informant.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2017, a West Virginia Department of Natural Resources ("DNR") officer initiated a traffic stop of a vehicle parked in the middle of a road in Lewis County, West Virginia. Upon speaking with the driver, she admitted to having a marijuana "roach" in the vehicle. A subsequent search of the vehicle revealed a large quantity of methamphetamine. The DNR officer arrested the driver and transported her to the Lewis County Sheriff's Department. While there, the driver offered to provide officers of the Lewis County Sheriff's Department information on her drug supplier, petitioner, in exchange for the dismissal of her charges. The driver (hereinafter "informant") agreed to help officers arrange a controlled drug buy wherein she would purchase

---

[1]Relying on *North Carolina v. Alford*, 400 U.S. 25 (1970), this Court held in Syllabus Point 1 of *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987), that "[a]n accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him."

1

methamphetamine from petitioner. In attempting to arrange a meeting with petitioner, the informant reported that petitioner insisted on meeting in Upshur County, West Virginia, rather than in Lewis County. As a result, the Lewis County Sheriff's Department contacted the Chief of the Buckhannon Police Department to request assistance in carrying out the controlled drug buy. The departments agreed to assist each other and the controlled drug buy was arranged for the following day.

Officers arranged a hotel room for the informant in Buckhannon, West Virginia. Audio and video monitoring equipment was installed in the room, and officers in plain clothes waited in cars outside the hotel. Shortly after midnight, petitioner entered the hotel room, exited several minutes later, and returned to the vehicle in which he had arrived.[2] After speaking with the informant, officers learned that the controlled drug buy had been successful, and the DNR officer, who was still aiding in the investigation, ordered the arrest. Therefore, vehicle in which petitioner was a passenger was stopped and he was arrested. While officers from both departments were present for the arrest, a deputy from the Lewis County Sheriff's Department effectuated the arrest. Officers performed a search of the vehicle, which revealed the money designated for the controlled drug buy.[3]

In January of 2018, the Upshur County Grand Jury indicted petitioner on one count of delivery of a controlled substance. Petitioner filed a motion to suppress in April of 2018, arguing that the evidence seized from the vehicle subsequent to his arrest should be suppressed on the basis that the deputy from the Lewis County Sheriff's Department lacked jurisdiction to effectuate petitioner's arrest in Upshur County. However, at a hearing on the matter, the State introduced a mutual aid agreement signed by the Buckhannon Police Department, the Upshur County Sheriff's Department, the Weston Police Department, and the Lewis County Sheriff's Department in May of 2015. The agreement provided that "each of the law enforcement departments hereto agree to voluntarily aid and assist each other in the event that emergency and other situations should occur, by the interchange of law enforcement services and the exchange of criminal investigation and other information." The agreement further provided that "the parties hereto further invoke this voluntary aid and assistance agreement on a continuing basis for the interchange of law enforcement services in their day-to-day operations, particularly relating to drug and violent crime investigations." The State also presented the testimony of the Chief of the Buckhannon Police Department, who testified that the agreement was still in effect at the time of petitioner's arrest, which was performed under the provisions of the agreement.[4]

Ultimately, the circuit court found that the circumstances surrounding the arrest constituted an emergency situation as contemplated by the agreement. The circuit court opined that methamphetamine is a "dangerous drug and it's—it's a scourge on our society as far as I'm

---

[2]Petitioner was a passenger in the vehicle that was driven by another individual.

[3]Prior to the controlled drug buy, officers took pictures of the money and recorded the serial number on each bill.

[4]Several other law enforcement officers testified regarding the events leading up to petitioner's arrest.

2

concerned." The circuit court also noted that the circumstances happened quickly and law enforcement officers acted swiftly to work together to accommodate the controlled drug buy. Accordingly, the resulting stop of petitioner's vehicle, his arrest, and subsequent search of his vehicle were proper, and petitioner's motion to suppress the evidence was denied.

In July of 2018, petitioner entered a *Kennedy* plea to the one count of delivery of a controlled substance in exchange for the State's agreement to recommend that petitioner not be subject to any sentencing enhancements and that he be sentenced immediately without the preparation of a presentence investigation report. The agreement provided that petitioner would be able to appeal pretrial issues. The circuit court accepted the plea and sentenced petitioner to not less than one nor more than five years of incarceration. Petitioner's sentence was memorialized in the circuit court's September 5, 2018, sentencing order, and it is from this order that he appeals.

We have previously held that

> "[o]n appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syllabus Point 3, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994).

Syl. Pt. 1, *State v. Hoston*, 228 W. Va. 605, 723 S.E.2d 651 (2012).

On appeal, petitioner argues that the circuit court erred in denying his motion to suppress when the circumstances surrounding his arrest clearly did not constitute an emergency situation as contemplated by the mutual aid agreement. As such, the Lewis County deputy lacked jurisdiction to arrest petitioner and any evidence recovered during the search of his vehicle subsequent to his arrest should have been suppressed. According to petitioner, the agreement defined an "Emergency Situation" as an "actual or potential condition within the jurisdiction of one or more of the law enforcement departments that poses an immediate threat to life or property that exceeds the resources and capability of the jurisdiction(s) to successfully bring the situation under control." Petitioner contends that the controlled drug buy cannot be considered an emergency situation due to the fact that the State created the situation by helping the informant arrange the controlled drug buy. Petitioner avers that "[a]n emergency situation presumes an ongoing event, such as a disaster, a multi-vehicle car accident, a hostage situation, a terrorist attack, and so forth." Under the circumstances of this case, the controlled drug buy does not constitute an "immediate threat to life or property," and the circuit court erred in finding that the circumstances surrounding his arrest constituted an emergency situation and in finding that the Lewis County deputy who effectuated his arrest had the jurisdiction to do so. Upon our review, we find that petitioner is entitled to no relief, albeit for different reasons than set forth by the circuit court.[5]

---

[5]We have held that "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

3

Petitioner acknowledges that the mutual aid agreement was properly created pursuant to West Virginia Code § 15-10-4, but simply contends that the situation surrounding his arrest does not invoke the agreement. However, petitioner fails to acknowledge that the agreement provides for the applicable law enforcement departments to assist each other in situations other than emergency situations. Indeed, the provision immediately following the provision which provides for aid in an emergency situation states as follows: "Whereas, the parties hereto further invoke this voluntary aid and assistance agreement on a continuing basis for the interchange of law enforcement services in their day-to-day operations, particularly relating to drug and violent crimes investigations . . . ." As such, it is clear that the parties intended to give and receive aid in situations other than emergency situations. The circumstances surrounding petitioner's arrest clearly fall into this second provision, which provides that the departments may request assistance in day-to-day operations including drug crime investigations. Here, the informant told the Lewis County Sheriff's Department that she could assist them in setting up a controlled drug buy with petitioner. When petitioner refused to meet the informant in Lewis County, officers reached out to the Buckhannon Police Department to invoke the mutual aid agreement. The informant and the officers of the involved departments successfully completed the controlled drug buy in Upshur County, petitioner was arrested, and evidence of the buy was discovered in his car. While the circuit court found that these facts constituted an emergency situation, we need not reach that conclusion given that this controlled drug buy clearly falls within the parameters of the departments' day-to-day operations involving drug crime investigations. Based on the foregoing, we find that petitioner is entitled to no relief in this regard as the arresting officer had jurisdiction to arrest petitioner pursuant to the mutual aid agreement.

Petitioner also argues that the circuit court erred in denying his motion to suppress when the informant was an unreliable, inconsistent informant. According to petitioner, his Fourth Amendment protections were violated given that he was arrested without a warrant based upon the unreliable claims of the informant. As such, any evidence seized as a result of his arrest is inadmissible. However, petitioner failed to preserve this claim for appeal. In his brief on appeal, petitioner provides no citation to the record establishing where he argued the informant's unreliability before the circuit court below. This failure is in direct contradiction of this Court's Rules of Appellate Procedure and specific directions issued by administrative order. Specifically, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. *The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal.* The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(Emphasis added). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, this Court specifically noted that "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal

4

. . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.*

Upon our review of the record, it is clear that petitioner failed to raise this issue before the circuit court below. In his motion to suppress, petitioner provided no argument regarding the reliability of the informant. Further, petitioner agreed that the informant's reliability was an issue distinct from the issues underlying his motion to suppress. During the suppression hearing, the following exchange ensued:

| [Petitioner's counsel]: | The State's got a problem, I think, with the informant potentially as far as the reliability of them. |
| The Court: | Well, that's a different issue; isn't it? |
| [Petitioner's counsel]: | That – it is. |
| The Court: | I mean, that's an issue obviously, but – you know, an informant comes to testify, (inaudible) his credibility (inaudible) to do that. As far as this motion to (inaudible). |
| [Petitioner's counsel]: | I agree with that, Your Honor. I just – perhaps keep – so I believe the issue – the narrower issue for today is the issue of the legality of this buy or transaction. |

Petitioner did not object, continue to raise the issue, or provide any argument regarding the informant's reliability. The entirety of the hearing focused on the legality of petitioner's arrest under the mutual aid agreement. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Because petitioner failed to properly raise this issue below, we decline to address this assignment of error on appeal.

For the foregoing reasons, the circuit court's September 5, 2018, sentencing order is hereby affirmed.

Affirmed.

**ISSUED:** January 17, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison