# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Petitioner**

**FILED**

**July 30, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 19-0424** (Marion County CC-24-2013-F-233)

**James K.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner James K.,[1] by counsel Scott A. Shough, appeals his conviction and sentence in the Circuit Court of Marion County on two counts of first-degree sexual assault and two counts of use of a minor in filming sexually explicit material. Respondent State of West Virginia, by counsel Scott E. Johnson, filed a response in support of the circuit court's April 8, 2019, sentencing order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 17, 2013, petitioner was indicted on twenty-four counts: eight counts of first-degree sexual assault; ten counts of use of a minor in filming sexually explicit conduct; and six counts of first-degree sexual abuse.

On October 11, 2014, petitioner participated in a court-ordered "Mental Status Examination" conducted by psychiatrist Brian Quigley, MD, to determine whether petitioner was competent to stand trial. Following a thorough evaluation, Dr. Quigley opined that petitioner "had no psychiatric diagnoses" and "was capable of participating substantially in his defense and understood the nature and consequences of a criminal trial."

On May 12, 2015, petitioner was scheduled to enter guilty pleas to four counts of his indictment; however, he failed to articulate his criminal conduct for at least two of those counts. Accordingly, the trial court refused the plea agreement and continued the case to the next term of court.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

At the second plea hearing on July 7, 2015, the trial court explained the maximum sentence on each count, instructed petitioner that an *Alford/Kennedy*[2] plea "is just as binding and has the same effect as if you admitted certain facts," and ensured that petitioner understood he could be sentenced to the maximum penalty on each count even if he gave no facts admitting guilt. Petitioner denied ever being treated for a mental illness and then entered an *Alford/Kennedy* plea to the following four counts: Count 7 (first-degree sexual assault of I.G.); Count 9 (use of a minor, I.G., in filming sexually explicit conduct); Count 14 (first-degree sexual abuse of B.G.); and Count 20 (use of a minor, B.G., in filming sexually explicit conduct). Petitioner stated that he was entering guilty pleas because it was in his best interest. Given petitioner's guilty pleas, the trial court did not require petitioner to allocute, but directed the State to lay a factual foundation for the pleas.

The State laid out the following factual foundation for petitioner's guilty pleas: Petitioner is a "cousin" to Teresa G. and John G. Teresa is the mother of male victim I.G. and John is the father of male victim B.G. At the time of petitioner's crimes, petitioner was living with Teresa and John. I.G. told Teresa that, when he was in petitioner's room, petitioner would take off his clothes, inappropriately touch I.G., and take photos. Teresa discussed I.G.'s allegations with petitioner, who denied them. Petitioner then moved out of Teresa and John's home. Later, Teresa found a "fireproof little vault" in the room petitioner had stayed in. The vault contained a thumb drive and five CDs. The thumb drive contained twenty-nine images of victims I.G. and B.G. (the "victims").

The victims were interviewed at a Child Advocacy Center. Both victims said that petitioner took them to his room, undressed them, and touched them or placed his mouth or his penis on various parts of their bodies. In a non-custodial interview with the police, petitioner admitted to taking the images of the victims, some of which showed I.G.'s or B.G.'s anus, buttocks, or penis. Other images showed an adult hand pulling down underwear. Petitioner admitted that the hand in these images was his hand. Petitioner also said that he touched I.G.'s "butt" with his hand, I.G.'s penis with his penis, his penis to I.G.'s buttock, and that he and I.G. gave and received oral sex. Petitioner also admitted that he touched B.G.'s penis with his hand, touched B.G.'s "butt," and touched his penis to B.G.'s penis. Petitioner then admitted to possessing the camera and taking the images found on a thumb drive in the vault. Petitioner did not recall when these things occurred; however, the information on the camera indicated that the images were taken in the fall or winter of 2011 when the victims were three or four years old. At that time, petitioner was thirty or thirty-one years old.

The trial court accepted petitioner's *Alford/Kennedy* pleas and found that they were made knowingly, intelligently, voluntarily, and with the advice of counsel.

At petitioner's September 24, 2015, sentencing hearing, petitioner called no witnesses and did not address the trial court. The trial court noted that petitioner consciously decided not to seek a sexual offender evaluation given his *Alford/Kennedy* pleas. Petitioner requested concurrent sentencing or home incarceration. The trial court commented at length on the damage petitioner had inflicted upon the victims and then imposed the maximum possible sentence due to the nature

---

[2] In *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987), this Court relied upon the United States Supreme Court's decision in *North Carolina v. Alford*, 400 U.S 25 (1970) (allowing a criminal defendant to plead guilty and to accept a prison sentence without admitting guilt).

of petitioner's crimes and the fact that there were two victims. Specifically, the trial court sentenced petitioner to (1) twenty-five to one-hundred years in prison for Count 7; (2) five to twenty-five years in prison for Count 9; (3) ten years in prison for Count 14; and five to twenty-five years in prison for Count 20. The trial court then ordered that petitioner's sentences run consecutively. The trial court also imposed thirty years of supervised release and required petitioner to register as a sexual offender upon his release from prison. Petitioner was resentenced on April 8, 2019, to enable this appeal.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*State v. Sites*, 241 W. Va. 430, 437, 825 S.E.2d 758, 765, *cert. denied sub nom. Sites v. W. Virginia*, 140 S. Ct. 565, 205 L. Ed. 2d 362 (2019) (quoting Syl. pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000)).

In his first assignment of error, petitioner argues that the trial court erred in finding that he was competent to proceed to trial. Petitioner admits that the psychiatrist who examined him, Dr. Quigley, found him mentally competent to proceed to trial. However, petitioner claims he answered many of Dr. Quigley's questions by saying, "I'm not sure." Petitioner claims that answer showed his low level of education and his lack of understanding of his legal rights. Petitioner admits that Dr. Quigley educated him as to the meaning of various legal concepts and that he told Dr. Quigley he understood those concepts, but he claims he did so only to please Dr. Quigley. Petitioner also claims that his mental status evaluation is replete with examples of him saying one thing but believing something else. For example, petitioner said that he "hope[d] this case [would] turn out in his favor" and that he could "work with his attorney to tell his side of the story" even though he was charged with twenty-four counts, including child sexual assault, child sexual abuse, and using minors in filming sexually explicit conduct. Petitioner argues that Dr. Quigley should have found that petitioner's statements showed he did not understand what he was facing. Petitioner concludes that a more detailed examination might have resulted in a different outcome.

Following petitioner's mental status examination, Dr. Quigley made the following findings: (1) Petitioner's thought pattern was goal directed and linear. (2) Petitioner was not suicidal in the two weeks preceding the interview and he had no history of suicide attempts or self-injury. (3) Petitioner had no history of delusions or hallucinations and he did not report magical thinking or preoccupations. (4) Petitioner was oriented as to the day, month, year, seasons, and locations. (5) Petitioner passed various tests regarding recall, sequencing, and similarities. (6) Petitioner's judgment based on a hypothetical vignette was fair, as was his insight into his legal case. (7) Petitioner "understood the meaning and the nature of the charges against him including that the charges involve inappropriate sexual conduct with children and inappropriate filming of children." (8)Petitioner also understood that "he had over twenty charges," that the "penalties could include a long prison sentence on the scale of many years," and "the range and potential seriousness of the penalties against him in the event of a conviction." (9) Petitioner knew his attorney, could name him, and stated the various methods by which he could contact his attorney.

(10) Petitioner expressed trust in his attorney and said his attorney's role was to "help my case." (11) Petitioner understood the adversarial nature of a criminal case and that the prosecuting attorney's role was "trying to put you in jail." (12) Petitioner appreciated the role of evidence at trial and could offer reasonable assessments about the value of evidence in several hypothetical circumstances and in his own case. (13) Petitioner said he did not understand the meaning and implication of a "guilty plea," a "not guilty plea," and "plea bargaining," but, after Dr. Quigley educated petitioner about those terms, petitioner comprehended them. Further, petitioner retained that comprehension and responded reasonably to questions regarding how a guilty plea, a not guilty plea, and plea bargaining might apply in his case. (14) Petitioner denied understanding a "not guilty by reason of insanity plea"; however, Dr. Quigley educated petitioner about that type of plea. Petitioner retained that information and was able to apply it to his case in a reasonable way. (15) Petitioner told Dr. Quigley that he hoped his case would turn out in his favor and that he believed he could work with his attorney to tell his side of the story. (16) Finally, petitioner understood how to comport himself in court. Based on these findings, Dr. Quigley opined in his report that petitioner had no psychiatric diagnoses and "was capable of participating substantially in his defense and understood the nature and consequences of a criminal trial." On this record, we conclude that petitioner's claims are insufficient to raise any doubt regarding his competency. Accordingly, the circuit court did not abuse its discretion in finding that petitioner was competent to stand trial.

In petitioner's second assignment of error, he argues that the trial court erred in allowing him to enter *Alford/Kennedy* pleas. Petitioner argues that, at his first plea hearing in May of 2015, he was unable to articulate a factual basis for the crimes of which he was charged. Thus, petitioner argues that the trial court should have had serious concerns about the validity of his pleas at the second plea hearing. Petitioner admits that the trial court asked him various questions regarding the voluntariness of his plea, but claims that the court did not ask if petitioner knew, or if his trial counsel had explained to him, the effect an *Alford/Kennedy* plea could have at sentencing. Petitioner claims the court's acceptance of such a plea without "additional safeguards" was error.

"[T]he decision to accept or reject a plea agreement is vested almost exclusively with the circuit court." Syl. Pt. 3, in part, *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 465 S.E.2d 185 (1995). Here, prior to accepting the plea, the trial court ensured that petitioner understood that an *Alford/Kennedy* plea "is just as binding and has the same effect as if you admitted certain facts." The court also ensured that petitioner understood he could be sentenced to the maximum sentence allowed by law even if he gave no facts admitting guilt. The circuit court also questioned petitioner's counsel as to whether petitioner understood the ramifications of an *Alford/Kennedy* plea and counsel answered in the affirmative. In fact, petitioner himself stated that his counsel fully explained the ramifications of an *Alford/Kennedy* plea to him and that he had no questions regarding his plea. As for petitioner's claim that the trial court did not provide him with "additional safeguards," we note that petitioner fails to state what additional safeguards should have been provided. Thus, we find that the trial court did not abuse its discretion in accepting petitioner's guilty plea.

In petitioner's third and final assignment of error, he argues that the trial court erred in imposing consecutive sentences. We review sentencing orders "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commends." Syl. Pt. 1, in part, *State v Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997). Petitioner claims that he did not

4

undergo a sexual offender evaluation in anticipation of sentencing, he did not address the trial court directly, and he presented no witnesses on his behalf, such as his aunt with whom he would have resided if the court had sentenced petitioner to home confinement. Petitioner contends that if these things had occurred, the court would have understood petitioner better and he might have received a more appropriate sentence. Petitioner also argues that he did not anticipate consecutive sentences and, if counsel had fully explored that possibility with him, he would have considered going to trial. Petitioner acknowledges the court's reasoning for his sentences and notes that his sentences are within statutory limits, but he claims that the court did not fully consider his lack of a prior criminal history, that his plea spared the children from testifying at trial, and that he had strong family support.

"Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982). Petitioner's sentences are within statutory limits and he does not argue that they are based on some impermissible factor; thus, they are not subject to appellate review. To the extent petitioner contends that the circuit court erred in running his sentences concurrently, the circuit court's decision is reviewed for an abuse of discretion. *See*, *e.g.*, *State vg. Harris*, 226 W. Va. 471, 474, 702 S.E.2d 603, 606 (2010). The court did not abuse its discretion in sentencing petitioner because, in West Virginia, the default method of sentencing is to run criminal sentences consecutively. *See* W. Va. Code § 61-11-21. Here, the circuit court said, "I believe consecutive is appropriate, because it recognizes in some small and insignificant way, but it does recognize that these are two individual boys, and I am not going to act like one or the other of them does not exist by treating this as one thing. It is wrong." On this record, we find no error.

Accordingly, for the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** July 30, 2020

**CONCURRED IN BY:**
Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison