# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 18-0971 (Ohio County 17-F-100)**

**Clifton Marcus Dent,**
**Defendant Below, Petitioner**

**FILED**

**October 11, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Clifton Marcus Dent, by counsel Richard W. Hollandsworth, appeals the August 30, 2018, order of the Circuit Court of Ohio County that sentenced petitioner to ninety years in prison for his *Kennedy*[1] plea to one count of robbery in the first-degree. The State of West Virginia, by counsel Scott E. Johnson, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court abused its discretion and violated Article III, Section 5 of the West Virginia Constitution in sentencing petitioner.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At about 4:30 p.m. on May 12, 2017, police officers arrived at the scene of a carjacking in Wheeling. The officers spoke with the victim, seventy-two-year-old Diane Higgs, who was bleeding from her nose and face and had severe swelling around both eyes. Ms. Higgs reported that, as she parked in front of her apartment building, she saw a black man with short hair walking towards her gold 2008 Honda CRV (the "Honda"). The man opened the Honda's door and demanded Ms. Higgs's car keys. When Ms. Higgs did not immediately comply, the man repeatedly struck her in the face and head, pulled her out of the Honda, and threw her onto the ground. The man then drove off in the Honda going the wrong direction on a one-way street. The police arrived at the scene soon thereafter. They questioned Ms. Higgs and found she needed immediate medical attention. Ms. Higgs was then transported to the hospital by ambulance.

---

[1] Relying on *North Carolina v. Alford*, 400 U.S. 25 (1970), this Court held in Syllabus Point 1 of *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987), that "[a]n accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him."

1

Mary L. Klosterman, who lived in the same apartment complex as Ms. Higgs, reported that she heard screams and a car alarm and observed Ms. Higgs's Honda backing out of a parking spot. Becky Meadows, who also lived in the same apartment complex, observed a black man getting into Ms. Higgs's Honda while Ms. Higgs was on the ground screaming. Soon thereafter, Karen Clyne reported seeing a gold Honda driving the wrong way on Pike Street. The driver of the Honda yelled at Ms. Clyne to "get out of the way." Ms. Clyne described the driver as a black male with curly hair who appeared to be thirty to forty years old. At 5:39 p.m., Luke Reed called the Wheeling Police and informed them that a gold Honda was traveling eastbound on I-70 between Claysville and West Alexander, Pennsylvania. Diane Schau also reported a gold car in the eastbound lane of I-70. The Pennsylvania State Police located Ms. Higgs's Honda broken down on the eastbound berm of I-70. They found petitioner nearby on foot and noted he matched the descriptions given by the various witnesses.

Petitioner was indicted in Ohio County on one count of first-degree robbery and two counts of malicious assault.

Christi Cooper-Lehki, DO, prepared petitioner's "Forensic Psychiatry Report: Competency to Stand Trial/Criminal Responsibility." Dr. Cooper-Lehki found that, despite petitioner's diagnosis of Schizoaffective Disorder, Bipolar Type, and Polysubstance Dependence, he did not lack substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. Dr. Cooper-Lehki also found that petitioner had "a sufficient rational and factual understanding of the proceedings against him and ha[d] adequate ability to assist his attorney in his own defense."

Thereafter, petitioner entered a *Kennedy* plea in which he agreed to plead guilty to one count of first-degree robbery pursuant to West Virginia Code § 61-2-12(a) and one count of unlawful assault pursuant to West Virginia Code § 61-2-10b(c). In his plea agreement, petitioner acknowledged that the penalty for first-degree robbery was not less than ten years in prison, and that the sentence for unlawful assault was one to five years in prison.

At an April 6, 2018, hearing, the circuit court accepted petitioner's *Kennedy* plea and sentenced him to one to five years in prison for his plea to unlawful assault. However, the circuit court delayed sentencing on petitioner's first-degree robbery plea so that petitioner's probation officer could prepare a presentence investigation report.

Following his guilty plea, petitioner participated in a court-ordered psychological evaluation "to provide the court with professional opinions for the purpose of sentencing." Dr. Robert Rush presented a detailed report to the court. Additionally, petitioner's probation officer prepared a presentence investigation report in which she recommended petitioner receive an eighty-year sentence given his substantial risk of reoffending. The probation officer noted in her report that she worked with petitioner for thirteen years during which he was arrested numerous times, had twelve misdemeanor and two felony convictions, and took his mother's car several times despite not having a valid driver's license. The probation officer also noted that petitioner is not compliant in taking his psychiatric medication and continues to use illegal drugs, which causes him to act out. The probation officer opined that petitioner's destructive behaviors are escalating,

2

and that he is in need of correctional treatment. The probation officer asserted that when petitioner is incarcerated, prison staff manage his medications, which is imperative for his well-being; and he is away from the illegal substances that make him volatile. The probation officer further found that petitioner (1) has serious mental and emotional issues, and drug and alcohol addiction; (2) has been on probation about four times since 1997, but failed to benefit from probation each time; and (3) has twice been placed on probation with the condition that he complete a treatment court program, but was removed from the program both times. Finally, the probation officer found that petitioner assaulted another woman on June 15, 2016, and demanded money from her while she sat in her vehicle. In that case, petitioner pled guilty to simple assault and his probation was revoked.

At an August 30, 2018, hearing, the circuit court sentenced petitioner to ninety years in prison for his first-degree robbery conviction, and ordered that the sentence be served consecutively to petitioner's sentence for unlawful assault. The circuit court entered its sentencing order on October 8, 2015. Petitioner now appeals his ninety-year sentence for first-degree robbery.

"The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).

On appeal, petitioner argues that the circuit court violated Article III, Section 5 of the West Virginia Constitution in sentencing petitioner to a ninety-year term of incarceration for his first-degree robbery conviction. That section provides, in pertinent part, that "[p]enalties shall be proportioned to the character and degree of the offence." Petitioner admits that a ninety-year sentence is permissible under the open-ended robbery statute; however, he argues that his sentence is so disproportionate that it shocks the conscience and offends fundamental notions of human dignity. Petitioner claims he will have to serve twenty-two years and six months in prison before he is eligible for parole, whereas a person convicted of murder in the first degree (with mercy) is eligible for parole in fifteen years. Petitioner also asserts that if he is not released on parole, he will serve forty-five years in prison with good time. Accordingly, he will be eighty-three years old when he is released from prison, well past the life expectancy of the average person. Therefore, petitioner avers that the circuit court imposed a life sentence. Finally, petitioner argues that his ninety-year sentence is disproportionate because he did not use a weapon when he assaulted Ms. Higgs. Petitioner points out that in *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983), we reversed a forty-five-year sentence for first-degree robbery and suggested the appropriate sentence was the ten-year statutory minimum because the defendant did not use a weapon.

Petitioner's sentence is not disproportionate under Article III, Section 5 of the Constitution of West Virginia. "Two tests are employed in determining whether a sentence is constitutionally disproportionate: a subjective test and an objective test. *State v. Gibbs*, 238 W.Va. 646, 659, 797 S.E.2d 623, 636 (2017)." *Jeffrey v. Mutter*, No. 17-0792, 2018 WL 4944959, at *5 (W. Va. Oct. 12, 2018)(memorandum decision). Under the subjective test,

> [p]unishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity,

3

thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

*Cooper*, 172 W. Va. at 267-68, 304 S.E.2d at 852, syl. pt. 5. "In making the determination of whether a sentence shocks the conscience, we consider all of the circumstances surrounding the offense." *State v. Adams*, 211 W. Va. 231, 233, 565 S.E.2d 353, 355 (2002). Here, petitioner demanded an elderly woman's car keys. When she did not comply quickly enough, he beat her severely and then threw her out of the car and onto the ground, causing significant injuries. In fact, petitioner struck Ms. Higgs with such force that doctors found bone fragments from her right orbital floor fracture in her right sinus cavity. Although petitioner blames his actions on his mental health problems, Dr. Cooper-Lehki found petitioner knew right from wrong and had the ability to conform his conduct accordingly. Consequently, given the violent nature of petitioner's crime against an elderly person, we do not find that petitioner's sentence shocks the conscience.

Having found that the subjective test does not apply, we turn to the objective test, which provides that,

> [i]n determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

Syl. Pt. 5, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

With regard to the nature of petitioner's first-degree robbery, we have previously observed that

> "[a]ggravated robbery[2] in West Virginia has been recognized as a crime that involves a high potentiality for violence and injury to the victim involved." *State v. Ross*, 184 W.Va. 579, 582, 402 S.E.2d 248, 251 (1990) . . . . *See also State v. Glover*, 177 W.Va. 650, 659, 355 S.E.2d 631, 640 (1987) ("[Aggravated r]obbery has always been regarded as a crime of the gravest character.").

*Adams*, 211 W. Va. at 234, 565 S.E.2d at 356. The aggravated robbery in this case was particularly violent and caused substantial injury to the elderly victim. Nevertheless, petitioner likens his case to *Cooper* where we reversed a forty-five-year robbery sentence and suggested a ten-year sentence.

---

[2] "W. Va. Code, 61-2-12, defines 'aggravated robbery' as 'commit[ting], or attempt[ing] to commit, robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or *by the threat or presenting of firearms*, or other deadly weapon or instrumentality." *State v. Massey*, 178 W. Va. 427, 431, 359 S.E.2d 865, 869 (1987). Accordingly, the law regarding "aggravated robbery" applies to petitioner's first-degree robbery conviction under West Virginia Code § 61-2-12(a).

4

However, petitioner fails to note that the defendant in *Cooper* was only nineteen years old at the time of his crime and had only one prior conviction, a misdemeanor for public intoxication. Conversely, petitioner was in his thirties when he robbed Ms. Higgs, and had a lengthy criminal history that included an assault on another woman during which he demanded money from her while she sat in her vehicle.

As for the legislative purpose behind petitioner's punishment, petitioner was convicted under West Virginia Code § 61-2-12(a) that provides:

> Any person who commits or attempts to commit robbery by: (1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years.

Although § 61-2-12(a) applies a minimum sentence, the West Virginia Legislature did not set a maximum sentence and, instead, left the maximum sentence to the trial court's discretion.

> Our cases have recognized that the legislatively created statutory minimum/discretionary maximum sentencing scheme for aggravated robbery serves two purposes. "First, it gives recognition to the seriousness of the offense by imposing a minimum sentence below which a trial court may not go. Second, the open-ended maximum sentencing discretion allows trial courts to consider the weight of aggravating and mitigating factors in each particular case." *State v. Mann*, 205 W.Va. 303, 316, 518 S.E.2d 60, 73 (1999) . . . (citation omitted).

*Adams*, 211 W. Va. at 234-35, 565 S.E.2d at 356-57. Here, the circuit court considered the weight of the aggravating and mitigating factors in this case and determined petitioner's sentence. Accordingly, the circuit court satisfied the legislative purpose behind petitioner's punishment.

As for petitioner's claim that his sentence is, in essence, a life sentence, we have recognized that "the Legislature, by not expressly fixing a maximum term, has impliedly authorized life imprisonment as the maximum penalty for aggravated robbery. *State v. Turley*, 177 W. Va. 69, 350 S.E.2d 696 (1986)." *State v. Mann*, 205 W. Va. 303, 315, 518 S.E.2d 60, 72 (1999).

Regarding a comparison of petitioner's ninety-year sentence for a first-degree robbery with sentences for first-degree/aggravated robbery in other jurisdictions, "[w]e have previously recognized that other jurisdictions permit long prison sentences for the crime of aggravated robbery." *Adams*, 211 W. Va. at 235, 565 S.E.2d at 357. In *Adams*, we found that Mr. Adams's ninety-year prison sentence for first-degree robbery was "consistent with punishments imposed by other jurisdictions for similar conduct." Accordingly, we find that petitioner's ninety-year prison sentence is consistent with punishments imposed for similar conduct by other jurisdictions.

Finally, with regard to comparisons with other offenses within West Virginia, in *Adams*, we highlighted that we have "rejected proportionality challenges in a number of cases involving

aggravated robbery sentences." *Id.* Moreover, as noted above, in *Adams* we affirmed a ninety-year sentence for aggravated robbery. *Id.* at 236, 565 S.E.2d at 358. Like petitioner, the appellant in *Adams* argued that a ninety-year sentence was disproportionate because he used no weapon, and only beat his robbery victim. We found that, "[w]hile it is true that this Court examines whether an aggravated robbery involved the use of a deadly weapon or violence, our analysis has never been limited to only these considerations." *Id.* at 235, 565 S.E.2d at 357. Although petitioner did not use a weapon during the commission of his robbery, he did employ extreme violence by striking and beating Ms. Higgs in the process of robbing her of her car. Thus, we do not find petitioner's sentence to be so disproportionate that it shocks the conscience or offends fundamental notions of human dignity. Accordingly, we reject petitioner's argument that his sentence violates Article 3, Section 5 of the West Virginia Constitution.

For the foregoing reasons, we affirm the circuit court's August 30, 2018, order sentencing petitioner to ninety years in prison for his first-degree robbery conviction.

Affirmed.

**ISSUED:** October 11, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison