565 S.E.2d 353

STATE of West Virginia, Plaintiff Below, Appellee,

v.

Ronald L. ADAMS, Defendant Below, Appellant.

No. 29960.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 16, 2002.

Decided Feb. 11, 2002.

Concurring Opinion of Justice Starcher July 2, 2002.

**232**

Herbert L. Hively, II, Hurricane, William R. Valentino, Charleston, for Appellant.

Mark A. Sorsaia, Prosecuting Attorney for Putnam County, Winfield, for Appellee.

PER CURIAM.

Ronald L. Adams, appellant/defendant below (hereinafter referred to as "Mr. Adams"), appeals from an order of the Circuit Court of Putnam County sentencing him to 90 years imprisonment for the conviction of aggravated robbery. The single issue presented in this appeal is whether the sentence imposed by the circuit court was disproportionate to the crime on which it was based. Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we affirm the decision of the Circuit Court of Putnam County.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 13, 1999, Mr. Adams and an accomplice robbed a Super America convenience store in Winfield, West Virginia.[1] Although no weapon was used during the robbery, Mr. Adams physically assaulted a store clerk.[2] After the robbery, Mr. Adams and his accomplice fled the scene with a total of $151.85.

The record fails to indicate how Mr. Adams was apprehended. However, on November 10, 1999, a grand jury returned a two count indictment against Mr. Adams and his accomplice.[3] On June 13, 2000, Mr. Adams entered a plea agreement to one count of the indictment, charging aggravated robbery on October 13. In return, the State dropped the second count of the indictment and declined to bring a recidivist information against him.[4] The plea agreement also indi-

---

1. The accomplice, Lowell Peters, remained outside the store. He was the driver of the get-away car.

2. The physical assault involved Mr. Adams grabbing the store clerk by her shirt.

3. In addition to the October 13 robbery, Mr. Adams and his accomplice were charged with committing a similar crime on October 12.

4. Mr. Adams' accomplice pled guilty to one count of aggravated robbery on December 17, 1999, and was sentenced to 10 years imprisonment on July 20, 2000.

cated that the State would recommend that Mr. Adams receive a sentence of 90 years imprisonment.[5]

On August 14, 2000, the trial court held a sentencing hearing. Mr. Adams spoke briefly on his own behalf at the hearing. Counsel for Mr. Adams spoke at length during the hearing and asked for leniency. The State made its recommendation of 90 years imprisonment. After affording both parties an opportunity to speak and submit evidence, the trial judge sentenced Mr. Adams to 90 years imprisonment. Subsequent to the sentence, Mr. Adams filed a motion pursuant to Rule 35(b) of the West Virginia Rules of Criminal Procedure, seeking a reduction in his sentence. The trial judge denied the motion on October 27, 2000. It is from this ruling that Mr. Adams now appeals.

## II.

### STANDARD OF REVIEW

■ This appeal requires this Court to review the sentence imposed upon Mr. Adams. In Syllabus point 1, in part, of *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997), we held that generally "[t]he Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands."¹ We held more specifically in Syllabus point 1 of *State v. Head*, 198 W.Va. 298, 480 S.E.2d 507 (1996), that:

In reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules of Criminal Procedure, we apply a three-pronged standard of review. We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review.

With these principles in mind, we now turn to the issue before the Court.

## III.

### DISCUSSION

Mr. Adams pled guilty to aggravated robbery and now contends that a sentence of 90 years for the conduct involved with his offense is both shocking and disproportionate to the crime itself. In *State v. Cooper*, 172 W.Va. 266, 272, 304 S.E.2d 851, 857 (1983), we held that "[t]here are two tests to determine whether a sentence is so disproportionate to a crime that it violates our constitution." (Citation omitted). The decision in *Cooper* outlined the two tests as follows:

The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test[.]

*Cooper*, 172 W.Va. at 272, 304 S.E.2d at 857.

■ *1. Subjective test.* Under the subjective test, we must determine whether the sentence imposed on Mr. Adams shocks the conscience. In making the determination of whether a sentence shocks the conscience, we consider all of the circumstances surrounding the offense. *See State v. Williams*, 205 W.Va. 552, 555, 519 S.E.2d 835, 838 (1999) (per curiam); *State v. Phillips*, 199 W.Va. 507, 513, 485 S.E.2d 676, 682 (1997) (per curiam).

■ Before imposing the sentence of 90 years, the trial court appropriately took into consideration the fact that Mr. Adams had five prior felony convictions. The prior convictions involved grand larceny, two unlawful wounding convictions, possession of a firearm, and possession of drugs. In addition, Mr. Adams committed another aggravated robbery for which the State did not prosecute under the plea agreement in this case. Obviously, Mr. Adams' prior criminal record

---

**5.** This provision of the plea agreement was handwritten. It was initialed by Mr. Adams, his counsel and the prosecutor.

is serious. The trial court was correct in giving considerable weight to the prior offenses in considering the sentence in this case. Moreover, the State argues that the 90 year sentence does not shock the conscience because it could have sought life imprisonment against Mr. Adams under our recidivist statute.[6] Finally, as pointed out by the State, the plea agreement in this case specifically placed Mr. Adams on notice that a 90 year sentence would be sought by the State. The above factors militate against finding that the sentence of 90 years shocks the conscience.

■ **2. Objective test.** The objective test was set out in Syllabus point 5 of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981):

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

■ **(a) Nature of the offense.** The crime involved in this case was aggravated robbery.[7] We have previously observed that "[a]ggravated robbery in West Virginia has been recognized as a crime that involves a high potentiality for violence and injury to the victim involved." *State v. Ross*, 184 W.Va. 579, 582, 402 S.E.2d 248, 251 (1990) (per curiam). *See also State v. Glover*, 177 W.Va. 650, 659, 355 S.E.2d 631, 640 (1987) ("[Aggravated] [r]obbery has always been regarded as a crime of the gravest character."). Although Mr. Adams correctly argues that there was no injury to the victim in this case, this fact does not diminish the inherent potential for injury or even death that can occur in an aggravated robbery crime. As a result of the inherent potential for harm in an aggravated robbery, the legislature has granted trial courts broad discretion in sentencing defendants convicted of the crime. *See State ex rel. Faircloth v. Catlett*, 165 W.Va. 179, 181, 267 S.E.2d 736, 737 (1980) ("[Aggravated robbery] is punishable by a term of not less than ten years, which may be any number of years from ten to life. The Legislature chose not to deprive trial courts of discretion to determine the appropriate specific number of years of punishment for [aggravated] robbery, beyond ten.").

Mr. Adams contends that our decision in *Cooper* warrants setting aside his sentence under this prong of the objective test. We disagree. The defendant in *Cooper* was convicted of aggravated robbery and sentenced to 45 years imprisonment. The controlling factor in that case was the fact that the defendant was only 19 years old and had only one prior conviction—a misdemeanor for public intoxication. We reversed the sentence of 45 years for aggravated robbery on the grounds that the sentence shocked the conscience. In the instant case, the circuit court's sentence of 90 years imprisonment, in view of Mr. Adams' extensive prior felony record, is a permissible punishment for aggravated robbery.

■ **(b) Legislative purpose behind the punishment.** Pursuant to the aggravated robbery statute, it is mandatory that the trial court sentence a defendant to not less than ten years imprisonment. The statute does not impose a maximum sentence for aggravated robbery. Our cases have recognized that the legislatively created statutory minimum/discretionary maximum sentencing scheme for aggravated robbery serves two purposes. "First, it gives recognition to the seriousness of the offense by imposing a minimum sentence below which a trial court may not go. Second, the open-ended maximum sentencing discretion allows trial courts

---

6. The State waived the right to file a recidivist information in exchange for the guilty plea.

7. Under W. Va.Code § 61–2–12(1961) aggravated robbery is set out as follows:

If any person commit, or attempt to commit, robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years.

to consider the weight of aggravating and mitigating factors in each particular case." *State v. Mann,* 205 W.Va. 303, 316, 518 S.E.2d 60, 73 (1999) (per curiam) (citation omitted). Moreover, we have previously rejected constitutional challenges to the open-ended scheme of our aggravated robbery statute. *See State v. Houston,* 166 W.Va. 202, 204–205, 273 S.E.2d 375, 376 (1980) ("[M]ost courts which have considered open-ended sentencing statutes have upheld the constitutionality of the statute as against claims of cruel and unusual punishment.").

Mr. Adams contends that the mitigating factors in his case outweigh the aggravating factors. Therefore, the legislative purpose behind the aggravated robbery statute required a lesser sentence. We disagree. The factors considered to be mitigating by Mr. Adams include the lack of injury to the victim, the small amount of money obtained, his acknowledged drug problem, and the. sentence received by the co-defendant. The purported mitigating factors do not outweigh the aggravating factors considered by the trial court, which included committing two aggravated robberies and having five prior felony convictions.

■ *(c) Comparison of the punishment in other jurisdictions.* We have previously recognized that other jurisdictions permit long prison sentences for the crime of aggravated robbery. *See State v. Boag,* 104 Ariz. 362, 453 P.2d 508 (1969) (75 to 99 year sentence); *People v. Isitt,* 55 Cal.App.3d 23, 127 Cal.Rptr. 279 (1976) (life sentence); *State v. Victorian,* 332 So.2d 220 (La.1976) (45 year sentence); *State v. Hoskins,* 522 So.2d 1235 (La.Ct.App.1988) (99 year sentence); *People v. Murph,* 185 Mich.App. 476, 463 N.W.2d 156 (1990) (two 46 year sentences); *Garrett v. State,* 486 S.W.2d 272 (Mo.1972) (99 year sentence); *State v. Morris,* 661 S.W.2d 84 (Mo.Ct.App.1983) (life sentence); *Robinson v. State,* 743 P.2d 1088 (Okla.Crim.App.1987) (100 year sentence). In the instant proceeding, Mr. Adams' sentence of 90 years imprisonment for aggravated robbery is consistent with punishments imposed by other jurisdictions for similar conduct.

■ *(d) Comparison with other offenses in the State.* Mr. Adams has acknowledged

that this Court has rejected proportionality challenges in a number of cases involving aggravated robbery sentences. *See State v. Williams,* 205 W.Va. 552, 519 S.E.2d 835 (1999) (upheld 50 year sentence for attempted aggravated robbery); *State v. Phillips,* 199 W.Va. 507, 485 S.E.2d 676 (1997) (upholding 140 year sentence for two counts of aggravated robbery and one count of kidnaping); *State v. Woods,* 194 W.Va. 250, 460 S.E.2d 65 (1995) (upholding sentence of 36 years for aggravated robbery); *State v. Ross,* 184 W.Va. 579, 402 S.E.2d 248 (1990) (upheld 100 year sentence for attempted aggravated robbery); *State v. Spence,* 182 W.Va. 472, 388 S.E.2d 498 (1989) (upheld 60 year sentence for aggravated robbery); *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988) (upheld life sentence for aggravated robbery); *State v. Brown,* 177 W.Va. 633, 355 S.E.2d 614 (1987) (upheld 60 year sentence for aggravated robbery); *State v. Glover,* 177 W.Va. 650, 355 S.E.2d 631 (1987) (upheld 75 year sentence for aggravated robbery). Mr. Adams has attempted to distinguish his case from these cases because the latter cases involved the actual use of a deadly weapon or physical violence, but his offense involved neither. We are not persuaded by this distinction.

While it is true that this Court examines whether an aggravated robbery involved the use of a deadly weapon or violence, our analysis has never been limited to only these considerations. *See, e.g., State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983) (reversing aggravated robbery sentence although violence was used). Our approach has always included an examination of "the nature of the offense committed, as well as the defendant's character and previous behavior." *State v. Williams,* 205 W.Va. 552, 557, 519 S.E.2d 835, 840 (1999). It is the totality of the circumstances that control our proportionality analysis. Under this approach, Mr. Adams' sentence of 90 years is not disproportionate. Although no deadly weapon was used and no extreme violence was committed in Mr. Adams' crime, the record documents that he had an extensive prior felony record that included violence and which made him an extreme danger to society. We have also

taken into consideration that Mr Adams was faced with a recidivist life sentence, had the State not agreed to drop the charge in exchange for a guilty plea.[8]

## IV.

## CONCLUSION

Mr. Adams' sentence of 90 years imprisonment for the crime of aggravated robbery is affirmed.

Affirmed.

STARCHER, Justice, concurring.

(Filed July 2, 2002)

There is a single point I wish to make in this case.

According to the briefs, the defendant in this case was released from prison on parole in August of 1999. Two months later he was committing the robberies that led to the ninety-year prison sentence that is at issue in the instant case. This defendant is apparently a "poster child" for how our correctional system is failing us.

The defendant's official "record" begins with a conviction of grand larceny in 1972, apparently followed by a substantial stretch in prison. The prosecution says the defendant has spent his entire adult life at "crime," and he will likely continue in that path. The circuit judge saw the case the same way, and imposed what is probably a life sentence for this forty-five-year-old defendant.

I concur in the Court's judgment, because I think there is a fair possibility that as a circuit judge, I would have read this defendant as a truly dangerous person who needs to be restrained for a very long time to protect the public. Even so, I would have probably imposed about a twenty-five-year sentence, on the grounds that in ten or twelve years there is a fair chance this defendant's tendency to crime and violence would have abated enough to let the parole board take a look at him. Ninety years seems too long for a crime with no weapon. But the

judge looked hard at this defendant and made a judgment that in this case I do not choose to second-guess.

---

**8.** Although we make no comment on the merits of the issue, we will point out that Mr. Adams' sentence of 90 years is not a life sentence, as he

argued, because he will eventually be eligible for parole consideration.