## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 16-1193** (Raleigh County 10-F-300)

**Tanya Jean Parker-Boling,**
**Defendant Below, Petitioner**

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Tanya Jean Parker-Boling, by counsel Shannon L. Baldwin, appeals the Circuit Court of Raleigh County's November 14, 2016, order revoking her supervised release and sentencing her to serve the balance of her twenty-five years of extended supervision in the custody of the West Virginia Division of Corrections. The State of West Virginia, by counsel Gordon L. Mowen II, filed a response in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court's sentencing her to serve the remainder of her twenty-five years of supervised release in prison is unconstitutional.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2010, petitioner was indicted on three counts of third-degree sexual assault. Pursuant to a plea agreement with the State, petitioner pled guilty to one count of third-degree sexual assault. The circuit court sentenced petitioner to an indeterminate term of not less than one year nor more than five years of incarceration and ordered that, upon petitioner's release from custody, she be placed on supervised release for a period of twenty-five years. In December of 2012, petitioner discharged her prison sentence.

Shortly after her release from prison, petitioner began a repeated course of violating the terms and conditions of her supervised release. On April 2, 2013, petitioner's Intensive Supervision Officer ("ISO") filed a petition to revoke petitioner's supervised release (the "first petition"). At a hearing on the first petition, petitioner admitted to a violation alleged in the first petition, and the circuit court revoked her supervised release and sentenced her to six months of incarceration. The circuit court also ordered that, following the completion of petitioner's incarceration, she be placed back on supervised release under the same conditions previously ordered.

1

Later that year, following petitioner's incarceration resulting from the first petition, petitioner's ISO filed a second petition to revoke petitioner's supervised release (the "second petition"). Following a hearing on the second petition, the circuit court found petitioner to have again violated the rules and conditions of her supervised release. The circuit court ordered that petitioner be incarcerated for ninety days and, upon release from incarceration, be placed on supervised release under the previously-imposed terms of that supervised release.

Not long after petitioner's release from the incarceration imposed following the second petition, petitioner's ISO filed a third revocation petition (the "third petition"). After finding that petitioner violated the terms of her supervised release as alleged in the third petition, on September 11, 2014, the circuit court ordered that she be incarcerated for four years and, upon completion of this sentence, returned to supervised release. Petitioner appealed this order to this Court. We affirmed the September 11, 2014, revocation and sentencing order by memorandum decision. *See State v. Parker-Bowling*, No. 14-1015, 2015 WL 6143403 (W.Va. Oct. 16, 2015)(memorandum decision).[1]

Petitioner discharged the sentence imposed following the third petition and, yet again, was alleged to have violated the terms of her supervised release in a fourth petition for revocation (the "fourth petition"). In this fourth petition, petitioner's ISO alleged that petitioner violated supervision condition numbers one, seven, twenty-one, and twenty-two. Condition number one required that petitioner "maintain a single, verifiable residence within Raleigh County. Any change of address must be approved by your probation officer." Petitioner was alleged to have violated this condition because Oakhurst Outreach, the facility at which petitioner had been living, informed petitioner's ISO that petitioner was no longer permitted to stay there due to her violation of its zero tolerance drug rules. Individuals staying at the facility were required to hand over their medications, and no controlled substances were allowed. Petitioner was alleged to have neglected to hand over one medication, Neurontin. Petitioner was also prescribed Adderall, which she was not permitted to fill.

Condition number seven required petitioner to "attend, actively participate in, and successfully complete a court-approved sex offender treatment program[.]" Petitioner was enrolled in such a program at Oakhurst Outreach, but was discharged due to her inability to be "conducive with staff and/or others during daily routines/groups that were attended." Petitioner "constantly push[ed] the limits with staff." Petitioner's violation of Oakhurst Outreach's zero tolerance drug rule was also cited in support of this violation.

Condition numbers twenty-one and twenty-two provided that petitioner "shall not engage in behavior that threatens yourself and others or that could result in your incarceration. I must not violate any City, State, or Federal Laws." Further, all violations of the law were to be reported to petitioner's probation officer within twenty-four hours. In support of this violation, petitioner's ISO stated that she went to Oakhurst Outreach to retrieve petitioner's belongings, including her phone and tablet. Petitioner's ISO discovered that petitioner had two Facebook accounts and an

---

[1]Throughout the record, petitioner is referred to alternatively as Tanya Jean Parker-Boling, Tanya Jean Parker, Tanya Jean Parker-Bowling, and Tanya Jean Boling.

e-mail account that were not registered with the state police. As a result of these discoveries, petitioner was charged with three felony counts of failing to register.[2]

On November 4, 2016, the parties appeared for a hearing on the fourth petition. The State noted that petitioner's ISO had exhausted its resources in finding placement for petitioner, given her numerous violations and failures in prior placements.[3] The circuit court found that petitioner violated the terms of her supervised release as alleged in the fourth petition. "Based upon the above findings and [the circuit court's] familiarity with [petitioner's] proceedings and continued post-release supervision violations since 2010[,]" the circuit court revoked petitioner's supervised release and remanded her to the custody of the West Virginia Division of Corrections for completion of her twenty-five-year term. After receiving credit for time served, petitioner's sentence amounted to a sentence of approximately 21.5 years in prison. It is from this order that petitioner appeals.

Petitioner alleges on appeal that her post-revocation sentence is unconstitutional in that it constitutes cruel and unusual punishment and is disproportionate to the crime committed. Petitioner argues that her original crime, third-degree sexual assault, carried only a one- to five-year sentence. With respect to her failure to register charges, petitioner states that she entered into a plea agreement whereby she pled guilty to only one count of failure to register. This charge similarly carried a one- to five-year sentence. Petitioner also asserts that combining her third-degree sexual assault and failure to register sentences results only in a two- to ten-year sentence. Further, if the parties had not entered into a plea agreement on her failure to register charges, if petitioner had been convicted of all three, and if the circuit court had ordered the sentences to run concurrently, her sentence would still have been only three to fifteen years of incarceration. Thus, petitioner submits that "[u]nder both the subjective and objective test, [her] sentence is excessive and disproportionate under the cruel and unusual punishment provision of the Constitution."[4]

---

[2]On December 20, 2016, petitioner, pursuant to a plea agreement with the State, pled guilty to one count of failure to register as a sex offender or provide notice of registration changes. The remaining two counts of failing to register were dismissed. The circuit court sentenced petitioner to an indeterminate term of not less than one year nor more than five years in the penitentiary. This sentence was ordered to run concurrently with petitioner's sentence on appeal in this matter.

[3]For a short period of time, petitioner resided with her brother; sister-in-law; and four children, two of whom were petitioner's brother's step-children. *Parker-Bowling*, 2015 WL 6143403 at *1. Due to the objections of the step-children's biological father, however, petitioner was no longer permitted to stay with her brother. *Id.* Thereafter, petitioner resided in a homeless shelter, but was discharged "due to her behaviors at the shelter[.]" *Id.* at *2. As mentioned above, petitioner was also discharged from Oakhurst Outreach.

[4]"Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the

"'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syl. Pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. Pt. 1, *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011).

"A criminal sentence may be so long as to violate the proportionality principle implicit in the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution." *Vance*, 164 W.Va. at 217, 262 S.E.2d at 425, Syl. Pt. 7. There are two tests for determining whether a sentence is so disproportionate to the crime that it violates Article III, Section 5 of the West Virginia Constitution. "The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further." *State v. Adams*, 211 W.Va. 231, 233, 565 S.E.2d 353, 355 (2002) (citation omitted). To determine whether a sentence shocks the conscience, this Court considers all of the circumstances surrounding the offense. *Id.* If a sentence is found not to shock the conscience, this Court proceeds to the objective test. Under the objective test, to determine whether a sentence violates the proportionality principle, "consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction." *Id.* at 232, 565 S.E.2d at 354, Syl. Pt. 2, in part.

West Virginia Code § 62-12-26(a), governing supervised release for certain sex offenders, provides that

> [n]otwithstanding any other provision of this code to the contrary, any defendant convicted after the effective date of this section of a violation of section twelve, article eight, chapter sixty-one of this code or a felony violation of the provisions of article eight-b, eight-c or eight-d of said chapter shall, as part of the sentence imposed at final disposition, be required to serve, in addition to any other penalty or condition imposed by the court, a period of supervised release of up to fifty years[.]

We have previously explained that, "[f]undamentally, the statute provides that a court impose a period of extended supervision as part of the criminal sentence for certain specified offenses, and sets forth the manner in which the supervision is to be administered and enforced." *James*, 227 W.Va. at 414, 710 S.E.2d at 105.

Moreover, "a court may modify, terminate or revoke any term of supervised release imposed[.]" W.Va. Code § 62-12-26(a). Specifically, a court may

> [r]evoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release without credit for time previously

---

character and degree of the offence.'" Syl. Pt. 8, *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980).

served on supervised release if the court, pursuant to the West Virginia Rules of Criminal Procedure applicable to revocation of probation, finds by clear and convincing evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this subdivision may not be required to serve more than the period of supervised release[.]

*Id.* at § 62-12-26(g)(3).

We find that petitioner's post-revocation sentence does not violate our constitutional proportionality principle. In *State v. Hargus*, 232 W.Va. 735, 753 S.E.2d 893 (2013), we found that a post-revocation sentence of five years did not violate our constitutional proportionality principle when Mr. Hargus, who was originally convicted of possession of child pornography, violated a condition of his supervised release. *Hargus*, 232 W.Va. at 744, 753 S.E.2d at 902. We noted that the possession of child pornography is a "serious offense" because it victimizes children, "the most vulnerable members of society." *Id.* We also noted the "immeasurable emotional and psychological violence to the children involved." *Id.* We observed that, even though Mr. Hargus's possession of child pornography "did not involve sexual contact, his consumption of child pornography made him an active participant in its production and dissemination." *Id.* Finally, we found that the violation of his condition of supervised release, which was his first violation, "indicate[d] a pattern of dishonesty."

In petitioner's case, just as in *Hargus*, her crime of third-degree sexual assault is a "serious offense" because a child was victimized.[5] In contrast to the situation presented in *Hargus*, however, petitioner's crime did involve sexual contact. Also unlike the situation presented in *Hargus*, petitioner's post-revocation sentence was imposed following her *fourth* violation. In *Hargus*, we found the five-year post-revocation sentence to not be disproportionate to the crime following his first violation. *Hargus*, 232 W.Va. at 744, 753 S.E.2d at 902. Given the seriousness of petitioner's underlying crime and the fact that a five-year post-revocation sentence following a first violation does not violate the proportionality principle, we find that petitioner's post-revocation sentence imposed following her fourth violation does not shock the conscience under the subjective proportionality test.

With respect to the objective proportionality test, we note that petitioner has failed to offer any analysis of the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, or a comparison with other offenses within the same jurisdiction. Accordingly, she has failed to establish that her sentence is disproportionate under the objective test. *See Hargus*, 232 W.Va. at 744, 753 S.E.2d at 902 ("Second, this Court finds that Mr. Hargus's post-revocation sanctions do not violate the objective test for constitutional disproportionality. In sum, Mr. Hargus has failed to specifically address how the nature of the offense, the legislative purpose behind the punishment, and a comparison with other offenses within the same jurisdiction compels the finding that his post-revocation sanctions violate our constitution's proportionality principle.");

---

[5]Not only that, but in petitioner's prior appeal to this Court, we documented that the forensic psychiatrist who examined petitioner found that she had "little recognition of how the events may have affected the minor." *Parker-Bowling*, 2015 WL 6143403 at *1.

*see also State, Dep't of Health & Human Res. v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995) ("[a] skeletal 'argument', really nothing more than an assertion, does not preserve a claim[.]")

For the foregoing reasons, the circuit court's November 14, 2016, order sentencing petitioner, is hereby affirmed.

Affirmed.

**ISSUED:** November 22, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Robin Jean Davis