# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0988** (Berkeley County CC-02-2019-F-85)

**Erik K.,**
**Defendant Below, Petitioner**

**FILED**

**October 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Erik K., by counsel B. Craig Manford, appeals the Circuit Court of Berkeley County's September 27, 2019, conviction and sentencing order adjudging him convicted of two counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child and sentencing him to consecutive terms of incarceration of not less than ten nor more than twenty years for each conviction.[1] Respondent State of West Virginia, by counsel Mary Beth Niday, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2017, the mother of a then-ten-year-old boy, D.C., reported to law enforcement that D.C. had possibly been the victim of sexual abuse by petitioner. Petitioner, who was a friend of D.C.'s uncle, was enrolled in college with the uncle. During breaks from school, petitioner would accompany the uncle to the uncle's home rather than return to his own home in Tennessee.[2] During these visits, a relationship developed between petitioner and D.C.'s family, such that the

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] D.C.'s mother and uncle lived together with D.C.'s grandparents.

family members began referring to petitioner as "Uncle Erik." Petitioner was alleged to have sexually abused D.C. during those breaks from school on various occasions between November of 2012 and January of 2017. Specifically, petitioner was alleged to have compelled D.C to both kiss his genitalia and to perform oral sex on him.

During the ensuing investigation, D.C. was interviewed. D.C. disclosed that, beginning when he was approximately five years old, petitioner would force D.C. to place his mouth on petitioner's genitals. Although D.C. could not recount a specific number of times the sexual abuse occurred, he stated that it occurred at least five times. On one occasion, D.C.'s sisters witnessed the sexual abuse. Accordingly, D.C.'s sisters were also interviewed, and one recalled observing petitioner lying on his back with his pants down and D.C. looking at petitioner's genitals. D.C.'s sister also witnessed D.C. touch petitioner's genitals.

Petitioner was indicted on six counts of first-degree sexual assault in October of 2017.[3] Following discovery, the filing of various motions, and the granting of several continuances, the parties reached a plea agreement on February 13, 2019. Under the terms of this agreement, petitioner agreed to plead guilty to two counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child, which were to be charged by information, in exchange for the State's dismissal of the first-degree sexual assault charges on which he was indicted.[4] The parties further agreed that sentencing would be left in the court's discretion, but each party was free to argue for any lawful sentence.

Prior to sentencing, petitioner underwent a psychosexual evaluation by Elisha Agee, Psy.D., to, among other things, determine petitioner's sexual offense recidivism risk and outline an appropriate treatment plan. Dr. Agee administered the Static-99R test to assess petitioner's sexual recidivism risk. Petitioner's score on that test placed him in the "above average" category for risk of being charged or convicted of another sexual offense, and this score was based on his relatively young age, never having lived with an intimate partner, and having had an unrelated male victim. Dr. Agee stated that 10.1% of men with petitioner's score on this test went on to sexually reoffend during a five-year follow-up period; therefore, about 90% of men with petitioner's score were not known to reoffend. Dr. Agee qualified her assessment by stating that,

> [o]f course, a score from the Static-99R (or any measure) does not indicate whether the individual who received that score will or will not sexually reoffend . . . . Therefore, the score is a reasonable starting point in assessment and can be used to place the person in a risk category, but it is not a prediction specific to that

---

[3] This action was assigned criminal action number 17-F-356. In the indictment, petitioner's abuse of D.C. was alleged to have occurred while D.C. was between the ages of five and ten and while petitioner was between the ages of eighteen and twenty-three.

[4] Petitioner waived his right to prosecution by way of indictment. The State filed the criminal information charging two counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child on March 11, 2019. This action was assigned circuit court case number 19-F-85, and 17-F-356 was merged with 19-F-85.

2

individual, who must be considered in the context of his own circumstances, characteristics, and resources.

Dr. Agee further noted that there are two broad sets of risk factors associated with sexual-offense recidivism: one, an impulsive, antisocial lifestyle; and two, sexual deviance. Dr. Agee concluded that petitioner "does *not* appear to manifest th[e] broad risk factor [of an impulsive, antisocial lifestyle] to any meaningful extent." Also, Dr. Agee explained that psychopathy is a personality style included within the broader category of antisocial lifestyle, and she saw "*no* indication that psychopathy is a risk factor that elevates his risk for sexual re-offense to any meaningful extent." Concerning sexual deviance, Dr. Agee found that available data warrants a diagnosis of pedophilic disorder, which is indicative of sexual deviance. But, she continued,

> [a]lthough there is evidence of a broader pattern of sexual interest in minors (based on his offenses against the present victim), there is no indication to suggest that children or minors are his *primary* sexual preference, or that [petitioner] has ever had any other form of sexual contact with minors aside from what is outlined in this report.[5]

In terms of treatment, Dr. Agee recommended sex-offender specific treatment, mental health treatment with a clinician who has expertise with sexual offenders, and restricted contact with minors.

Dr. Agee also detailed that, approximately ten minutes after her eight-hour evaluation of petitioner ended, petitioner returned to her office "crying while he shared that he was not entirely forthcoming with me." During the evaluation, petitioner claimed to have sexually abused D.C. four times. But upon returning to the doctor's office, he said that he abused D.C. "around [ten] [times]." Petitioner also disclosed that "he engaged in intercrural sex (i.e., non-penetrative sex during which the penis is placed between the receiving partner's thighs and thrusts to create friction and stimulation) with D.C. by laying him down on his stomach and initiating intercrural sex." Petitioner repeatedly apologized for not providing that information earlier and stated that "[i]t's what I'm most ashamed of." Ultimately, Dr. Agee found that petitioner

> came across as forthright in most respects . . . . Indeed, he appeared quite candid, providing information that might be construed negatively by others. Perhaps most telling of his transparency and desire to be forthcoming is that he returned to my

---

[5] Dr. Agee also stated that petitioner "did not evidence a preference for sexual contact with minors, rather, his offenses appear to be the product of unhealthy coping, little experience in typical intimate relationships, indiscriminate sexual interests, sexual preoccupation, poor judgment and decision-making, and stress and isolation following the termination of a relationship." While "some degree of sexual deviance is necessary to disregard the legal and moral barriers related to sexual contact with minors," Dr. Agee "did not find evidence to suggest that [petitioner] consistently sought or preferred sexual contact with minors over adults." But she reiterated that petitioner "*is at an <u>above average</u> risk of re-offense relative to other sexual offenders, particularly if he is constrained by traditional sex offender supervision strategies.*"

office about [ten] minutes after I completed the evaluation to provide more information regarding the alleged offenses.

The court held a plea and sentencing hearing on August 27, 2019, at which the court accepted petitioner's guilty pleas to two counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child and adjudged him convicted of those crimes. The court proceeded to sentencing. Petitioner argued for probation or home confinement, while the State, the victim's mother, and the victim's guardian ad litem argued for consecutive terms of incarceration. In finding that incarceration was warranted, the court considered five factors: 1. The "generous concessions already provided by the State" in dismissing the charges on which petitioner was indicted under the parties' plea agreement; 2. Petitioner's decision to return to the victim's family's home during breaks from school instead of traveling to visit his own family; 3. That petitioner's actions were the result of personal choice rather than, as he claimed, an addiction to sex; 4. The determination that petitioner was at an "above average" risk for reoffending; and 5. Petitioner's initial reluctance to fully disclose the number of times he abused D.C.[6] Accordingly, the court sentenced petitioner to consecutive terms of not less than ten nor more than twenty years of incarceration. The court also imposed fifty years of supervised release upon petitioner's release from incarceration and ordered restitution. The court entered its conviction and sentencing order memorializing its rulings on September 27, 2019, and this appeal followed.

Petitioner raises two assignments of error on appeal, both of which concern his sentence. In his first assignment of error, he asserts that the circuit court erred in imposing consecutive sentences rather than concurrent sentences or probation. Incorporated within this assignment of error is an assertion that the court based its sentence on impermissible factors. In petitioner's second assignment of error, he argues that his sentence was unconstitutionally disproportionate. We review sentencing orders "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Adams*, 211 W. Va. 231, 565 S.E.2d 353 (2002) (citation omitted).

In support of petitioner's first assignment of error, petitioner argues that the court's decision to impose consecutive sentences and deny his request for probation was based on "flawed reasoning." First, the court considered petitioner's favorable plea bargain. Because the court was not privy to the parties' plea negotiations or the strengths and weaknesses of the State's case, petitioner contends that characterizing the plea agreement as favorable amounts to an assumption of petitioner's guilt. Second, the court dismissed petitioner's assertion that he suffered from an addiction to sex and found that petitioner returned to the victim's home knowing he would reoffend. Petitioner claims that he returned to the victim's home because he was best friends with the victim's uncle, not because he had the "preconceived intent to commit any additional crime." Petitioner also claims that the court's consideration of his return to D.C.'s home ignored the clinical evidence of his sex addiction, which he claims Dr. Agee's evaluation "clearly bears out." Third, in further reference to Dr. Agee's evaluation, petitioner states that the court focused exclusively on the Static-99R test, despite that test being only a "starting point" and not "prediction

---

[6] In addition to initially withholding the full extent of his abuse of D.C. from Dr. Agee, petitioner, in his statement to the probation officer who completed his presentence investigation report, claimed only two instances of abuse.

4

specific," and it ignored her treatment plan for petitioner. Fourth, petitioner states that the court "found" or "insinuated" that he was untruthful, which is inaccurate. Petitioner acknowledges that he was not "initially completely candid and forthright," but he returned to Dr. Agee's office to make a full disclosure, and he explains that he did not fully disclose to the probation officer who completed his presentence investigation report because he thought he only needed to describe the two instances giving rise to the charges to which he pled.

"Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review."[7] Syl. Pt. 2, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982). "[T]he impermissible factors a court should not consider in sentencing include such matters as 'race, sex, national origin, creed, religion, and socioeconomic status . . . .'" *State v. Moles*, No. 18-0903, 2019 WL 5092415, *2 (W. Va. Oct. 11, 2019)(memorandum decision) (citing *U.S. v. Onwuemene*, 933 F.2d 650, 651 (8th Cir. 1991)). We have also stated that a "defendant has a due process right to be sentenced on the basis of accurate information." *State v. Bleck*, -- W. Va. --, --, 843 S.E.2d 775, 779 (2020) (citation omitted). Concerning petitioner's request for probation, "[t]he decision of a trial court to deny probation will be overturned only when, on the facts of the case, that decision constituted a palpable abuse of discretion." Syl. Pt. 3, *State v. Shaw*, 208 W. Va. 426, 541 S.E.2d 21 (2000) (citation omitted). And the decision to run sentences concurrently, rather than consecutively, also rests in the circuit court's discretion. Syl. Pt. 3, *State v. Allen*, 208 W. Va. 144, 539 S.E.2d 87 (1999).

Petitioner has not demonstrated that the court considered an impermissible factor or sentenced him on the basis of inaccurate information. Petitioner does not argue that he was sentenced on the basis of race, sex, national origin, creed, religion, or socioeconomic status, and he cites no law suggesting that a court cannot consider the benefits of a plea bargain. Petitioner's leap that the court went beyond considering the favorable terms—which petitioner's counsel also acknowledged at sentencing[8]—and presumed petitioner's guilt is not supported by the record. The court stated only facts in recounting that "[t]he [S]tate did agree to drop several counts in the original indictment and proceed on only two counts by way of information and so the [c]ourt does find a great and significant grace has been granted to the defendant in that negotiation on behalf of the [S]tate." The court made no insinuations as to petitioner's guilt.

Likewise, petitioner's claim of a sex addiction is not borne out in Dr. Agee's report. Dr. Agee's "diagnostic impressions" did not include that alleged addiction; rather, any mention of sex

---

[7] Petitioner acknowledges that his sentences are within statutory limits.

[8] Petitioner's counsel stated,

> I thank—first of all believe it or not I do thank the [S]tate for its concessions. Thank all involved in the process, the guardian *ad litem*. I thank the family. I know that there was a lot of consultation. [The prosecutor] and I spent a lot of time on the phone in talking to each other late in the evening trying to work something out and it was a good plea as far as what originally had been indicted and what evidence might come out at trial. So I do thank everyone involved for the concessions that were made and I truly and genuinely mean that, your Honor.

addiction came from petitioner. Thus, there was no "clinical evidence" of this diagnosis for the court to have ignored. Further, petitioner, in fact, returned to the victim's home despite an awareness of his prior sexual abuse of D.C. It is also the case that Dr. Agee's report contains the finding that petitioner's Static-99R score "places him in the 'Above Average' category (Level IVa) for risk of being charged or convicted of another sexual offense," and, despite returning to Dr. Agee's office to fully disclose his conduct, he was not initially forthcoming. Petitioner's claims amount to nothing more than a desire for the court to have weighed or viewed the evidence differently, but his desire for a different outcome, be it probation or concurrent sentences, does not establish an abuse of the court's discretion. "It is not the proper prerogative of this Court to substitute its judgment for that of the trial court on sentencing matters, so long as the appellant's sentence was within statutory limits, was not based upon any impermissible factors, and did not violate constitutional principles." *State v. Georgius*, 225 W. Va. 716, 722, 696 S.E.2d 18, 24 (2010). As petitioner has failed to demonstrate that the court considered any impermissible factors or sentenced him on inaccurate information, we find no abuse of the court's discretion in denying his request for probation or consecutive sentences.

In petitioner's second and final assignment of error, he argues that his sentence is disproportionate to his offense. Petitioner assumes that his sentence of not less than twenty years nor more than forty years amounts to a "twenty[-]year flat sentence," if good behavior is taken into account. Given petitioner's lack of criminal history, status as a college graduate, acceptance of responsibility for his crimes, demonstrable remorse, and initiation of sex offender treatment, he asserts that a twenty-year sentence shocks the conscience. Petitioner argues that, under the objective test employed by courts in evaluating proportionality challenges, his sentence is disproportionate because he would "probably serve less time" had he been convicted of first-degree murder with a recommendation of mercy.

In *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983), we outlined the two tests used to determine whether a sentence is so disproportionate to a crime that it violates the proportionately principle contained within Article III, Section 5 of the West Virginia Constitution.[9]

> The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

*Cooper*, 172 W. Va. at 272, 304 S.E.2d at 857. Under this first test, "we consider all of the circumstances surrounding the offense." *Adams*, 211 W. Va. at 233, 565 S.E.2d at 355 (citations omitted). The second, objective test, found in *Wanstreet*, provides that

---

[9] "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offense.'" Syl. Pt. 4, *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983) (citation omitted).

[i]n determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

166 W. Va. at 523-24, 276 S.E.2d at 207, syl. pt. 5.

We also held in *Wanstreet*, however, that "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist statute." *Id.* at 523, 276, S.E.2d at 207, syl. pt. 4. Petitioner's sentences include fixed maximums, and a recidivist life sentence was not imposed; accordingly, petitioner's sentence is not appropriate for a proportionality analysis. Even if we exercise our discretion and review petitioner's proportionality arguments, as we recently did in *State v. Patrick C.*, -- W. Va. --, --, 843 S.E.2d 510, 514 (2020), petitioner has failed to establish that his sentence is disproportionate under either test. Subjectively, his sentence does not shock the conscience of this Court or society. Petitioner highlights his own purported attributes, but he neglects to consider the repeated harms he inflicted upon his young victim. Further, his attempt to satisfy the second, objective test falls short as he offers only, at best, "a comparison [of his sentence] with other offenses within the same jurisdiction," neglecting to address the other factors set forth in that test.

An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

*State v. Lambert*, 236 W. Va. 80, 100, 777 S.E.2d 649, 669 (2015) (citation omitted). Petitioner's reference to the statutory penalty for first-degree murder, without more, fails to demonstrate that his sentence is disproportionate.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  October 13, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison