# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 19-1011** (Upshur County 19-F-35)

**Takiese Naceer Bethea,**
**Defendant Below, Petitioner**

**FILED**

**December 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Takiese Naceer Bethea, by counsel Jeremy B. Cooper, appeals the Circuit Court of Upshur County's October 3, 2019, sentencing order entered following his pleas of guilty to malicious assault and first-degree robbery. Respondent State of West Virginia, by counsel Lara K. Bissett, filed a response to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.[1]

On February 22, 2018, police received a call about a disturbance at the Colonial Motel in Buckhannon, West Virginia. At the motel, officers found blood on the floor in Room 56 of the motel, and they found a male who identified himself as Michael Harris. However, they discovered that was a false name and that individual was actually Lamere Troup. Upon entering the bathroom, an officer found the victim, Frank Hall, covered in blood with a swollen left eye, zip tie on one wrist, and duct tape on his wrist and ankles. Upon further inspection, officers discovered pepper spray, a knife, additional zip ties, a ski mask, gloves, and a loaded gun. Mr. Hall told an officer that his sister, Michaelina Sarne, had texted him earlier in the day stating that she was at the Colonial Motel and would like to see him. According to Mr. Hall, while he was there with his sister, two men wearing ski masks entered the room, duct taped his feet and arms at gunpoint, and demanded money from him. Mr. Hall was stabbed multiple times by petitioner, in addition to being pistol whipped and kicked by Mr. Troup, causing him to lose consciousness. Mr. Troup identified

---

[1] Petitioner also filed a motion for partial designation of the record. This Court hereby denies that motion.

1

petitioner as the person who stabbed Mr. Hall. Medical records show that Mr. Hall suffered multiple lacerations, facial swelling, and a broken nose.

Ms. Sarne essentially claimed to be a victim, as well, and denied knowing Mr. Troup or petitioner. However, Mr. Troup told officers that Ms. Sarne had offered him $10,000 to drive to West Virginia with Ms. Sarne and another man, later identified as petitioner, to rob Mr. Hall. Mr. Troup said that the group bought duct tape at a Rite Aid in New Jersey, where Mr. Troup lived, and also bought gloves, a ski mask, zip ties, and mace at Wal-marts in New Jersey and Maryland. He further told officers that Ms. Sarne's daughter, Alayna Puglia, drove them to West Virginia and stayed in the car while the others were in the motel room with Mr. Hall. A search of Ms. Sarne's cell phone showed that Mr. Hall texted her a picture of a bag of money on February 13, 2018, indicating that he had just received $60,000. On February 15, 2018, Ms. Sarne texted petitioner, "You wanna make sum cash??" Petitioner replied, "Don't ialways." On February 22, 2018, petitioner texted Ms. Sarne asking "me u n my boy making the trip?"

Petitioner and his co-defendants were indicted on January 15, 2019. Petitioner and Mr. Troup were indicted on charges of kidnapping, first-degree robbery, conspiracy, and malicious assault. Co-defendant Ms. Sarne was indicted of kidnapping, first-degree robbery, and conspiracy while co-defendant Ms. Puglia was indicted for conspiracy. According to petitioner, he and Mr. Troup are African American while Ms. Sarne and Ms. Puglia are Caucasian.[2]

Petitioner pled guilty to first-degree robbery and malicious assault. Prior to imposing petitioner's sentence, the circuit court directed that a presentence investigation ("PSI") be conducted. As part of that investigation, petitioner gave a written statement to the probation officer, which provided that petitioner

> was not only intoxicated but under the influence of [p]rescribed medication of Xanax. . . . Powered by my own greed, selfishness, and out right [sic] disregard for my morals I came up with the notion to rob Mr. Hall, after hearing about a large sum of money he had. Coming to WV I armed myself with a firearm, and other materials I may have needed to commit the crime. . . . I take full responsibility for what I did, im [sic] taking this time to transition to a better man. . . .[3]

After reviewing the PSI report, the circuit court entered its October 3, 2019, sentencing order ordering that petitioner be confined in the state penitentiary for a determinate period of thirty-six

---

[2] Mr. Troup's sentence is the same as petitioner's; Ms. Sarne was sentenced to one to five years of incarceration pursuant to her plea of guilty to a single count of conspiracy; and Ms. Puglia was sentenced to one year in jail on a misdemeanor count of accessory after the fact.

[3] Petitioner self-reported to the probation officer that he had a juvenile criminal history of "drug charges" and that after violating the terms of his probation at sixteen-years-old, he was placed in a juvenile detention center until he turned eighteen. As an adult, he had numerous criminal charges, including resisting arrest, possession of a controlled substance, aggravated assault, and being a fugitive from justice. Some of petitioner's prior charges were dismissed while he pled guilty to others.

years, with credit for 553 days served, for first-degree robbery and a term of two to ten years for malicious assault, with the sentences to run consecutively. In return for the entry of the guilty pleas, the State moved to nolle prosequi the remaining charges in the indictment; the circuit court granted that motion, so those charges were dismissed. Petitioner appeals from that sentencing order.

As we have previously stated,

> "'[t]he Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)." Syllabus Point 2, *State v. Georgius*, 225 W. Va. 716, 696 S.E.2d 18 (2010).

Syl. Pt. 1, *State v. Varlas*, -- W. Va. --, 844 S.E.2d 688 (June 11, 2020).

On appeal, petitioner asserts three assignments of error. First, he argues that the circuit court erred by sentencing him in violation of the constitutional principles of proportionality, due process, and equal protection, based upon the "massive disparity" between the plea offers and sentences given to his white co-defendants in comparison to the plea offers and sentences given to petitioner and his African-American co-defendant. At the outset, petitioner concedes that numerous states have maximum robbery sentences longer than petitioner's thirty-six-year sentence. He also admits that this Court has upheld numerous sentences in excess of thirty-six years for robbery. Petitioner, however, argues that "[i]t is the comparison with co-defendants Ms. Sarne and Ms. Puglia that most directly calls into question the proportionality of [p]etitioner's punishment, and also invokes the equal protection concerns . . . ." Petitioner's plea agreement included a recommendation by the State of the minimum ten-year sentence for first-degree robbery to run concurrently with a two to ten-year indeterminate sentence for malicious assault. He points out that he "got more than nine times as much time as Ms. Sarne, and up to forty-six times as much time as Ms. Puglia . . . ."

Without citing to the record, petitioner claims that Ms. Sarne orchestrated the entire conspiracy and was charged with two of the most serious offenses in West Virginia law but will be eligible for parole after only one year due to her plea of guilty to conspiracy in exchange for the dismissal of the robbery and kidnapping charges. The African American co-defendants were offered plea agreements in which they would plead guilty to malicious assault, which carries twice the amount of jail time as conspiracy, in addition to first-degree robbery, which has no upper limit. In arguing that the circuit court multiplied the recommended sentences of the African American co-defendants, petitioner asserts that the circuit court turned "a moderate gap into a chasm." In support of his argument, petitioner relies upon syllabus points one through three of *State v. Marrs*, 180 W. Va. 693, 379 S.E.2d 497 (1989), but those syllabus points specifically address the racial composition of a jury pool. He contends that although there is not a jury issue in the instant case since all of the co-defendants entered into plea agreements, the racially disparate treatment here involves invidious racial discrimination in the decisions of a prosecuting attorney.

3

This Court has long held that

[d]isparate sentences for co-defendants are not per se unconstitutional. Courts consider many factors such as co-defendants' respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse. If defendants are similarly situated, some courts will reverse on disparity of sentence alone.

*State v. Cooper*, 172 W. Va. 266, 271-72, 304 S.E.2d 851, 856 (1983). As this Court further explained in *Cooper*,

[t]here are two tests to determine whether a sentence is so disproportionate to a crime that it violates our constitution. *Accord, Stockton v. Leeke,* 269 S.C. 459, 237 S.E.2d 896, 897 (1977). The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981):

In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

*Cooper* at 272, 304 S.E.2d at 857.

As the State asserts, petitioner failed to point to anything in the record that demonstrates that the State acted "deliberately based upon an unjustifiable standard such as race." He also offers nothing to establish the race of Ms. Sarne and Ms. Puglia aside from his assertion that they are white. Further, petitioner testified, "If I can recall, I was the only one really doing it." However, he said that Ms. Sarne was involved "to an extent . . . she really didn't know like to-like what degree that I was about to go do 'cause I like mislead[sic] her in a way. Like I didn't really let them know what I was going to do." In addition, when petitioner was asked how he became involved in the crime, he did not implicate the women. Instead, he stated he "kn[e]w people like who deal drugs in the area and they was[sic] sayin' that this guy had a large sum of money that he was 'bout to purchase drugs.'" Referring to Mr. Troup, petitioner said "I'm going to go do this with him; but I think she's going to like-be scared so I don't want to involve [Ms. Sarne] too much because I don't really trust them that well." Petitioner even told the circuit court that Ms. Sarne "knew like I was coming out there with ill-intentions but she didn't know that it was going to be towards her brother." There is no dispute that neither Ms. Sarne nor Ms. Puglia committed acts of violence upon Mr. Hall. Petitioner's own statements clearly place the culpability for the crime at

the feet of petitioner and Mr. Troup. Therefore, we find no error in the circuit court's implied conclusion that petitioner was not similarly situated with the female co-defendants.

We also find that the sentence does not shock the conscience. As we have repeatedly found, "'[i]n making the determination of whether a sentence shocks the conscience, we consider all of the circumstances surrounding the offense.' *State v. Adams*, 211 W. Va. 231, 233, 565 S.E.2d 353, 355 (2002)." *State v. Patrick C.*, -- W. Va. --, 843 S.E.2d 510, 515 (Feb. 25, 2020). As set forth above, this violent crime was planned out with sufficient time to travel across several states, purchasing items the group deemed necessary at more than one location. Mr. Hall was violently attacked and suffered multiple lacerations, facial swelling, and a broken nose. According to Mr. Troup, petitioner was the one who stabbed Mr. Hall. Thus, it is clear that petitioner played a significant role in perpetrating the crime against Mr. Hall without any provocation by Mr. Hall. As set forth above, petitioner concedes that numerous states have maximum robbery sentences longer than petitioner's thirty-six-year sentence. He also admits that this Court has upheld numerous sentences in excess of thirty-six years for robbery. Therefore, we find that we do not need to fully address the objective test.

Petitioner next argues that the circuit court failed to sufficiently advise petitioner concerning the implications and procedure of his plea. In support of this assertion, petitioner argues that he is entitled, under Rule 11(e)(2) of the West Virginia Rules of Criminal Procedure, to be informed that he would have no right to withdraw his guilty plea in the event the sentencing court declined to adhere to the recommended sentence contained in the plea agreement. Generally citing fifteen pages of the record, petitioner asserts that the plea colloquy makes clear the circuit court's failure to make this admonition, as it did not inform petitioner that he would be unable to withdraw his plea if the circuit court declined to adhere to the sentencing recommendation. He does, however, acknowledge that the circuit court informed him of the following during the plea hearing:

> the State's going to make a recommendation of the years on [the sentence]. And I'm not – I'm not bound by that. That means that if you come in here I could sentence you – you know, robbery's got unlimited amount of time I could sentence you to. So it's just a minimum of ten years. Do you understand that part of it?

Petitioner responded, "Yes." He also denied having "any questions about any of that[.]" The circuit court continued by addressing the State's recommendation of a two to ten-year sentence for malicious assault and its recommendation that the sentences be concurrent, again informing petitioner that it did not "have to do that either. Do you understand that? I could run them consecutive rather than concurrent." At that point, petitioner responded, "Yes, sir." Petitioner confirmed that was his understanding of the plea agreement and denied having any questions about those issues.

Rule 11(e)(2) provides that

> [i]f a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A), (C), or (D), the court may accept or reject the

5

agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea.

In addressing Rule 11(e)(2), this Court set forth the following:

> A trial court has two options to comply with the mandatory requirements of Rule 11(e)(2) of the West Virginia Rules of Criminal Procedure. It may initially advise the defendant at the time the guilty plea is taken that as to any recommended sentence made in connection with a plea agreement, if the court does not accept the recommended sentence, the defendant will have no right to withdraw the guilty plea. As a second option, the trial court may conditionally accept the guilty plea pending a presentence report without giving the cautionary warning required by Rule 11(e)(2). However, if it determines at the sentencing hearing not to follow the recommended sentence, it must give the defendant the right to withdraw the guilty plea.

Syl. Pt. 2, *State v. Cabell*, 176 W. Va. 272, 342 S.E.2d 240 (1986). The circuit court clearly explained to petitioner that it was not bound by the State's recommendation and that it had the authority to impose consecutive sentences. Prior to the imposition of sentence, petitioner expressed neither confusion nor a resistance to move forward with his plea, regardless of the possibility of receiving consecutive sentences. Given these circumstances, the trial court's omission of the Rule 11(e)(2) provision was harmless error. *See* Syl. Pt. 3, *State v. Valentine,* 208 W. Va. 513, 541 S.E.2d 603 (2000) ("The omission of the statement required by Rule 11(e)(2) of the West Virginia Rules of Criminal Procedure must be deemed harmless error unless there is some realistic likelihood that the defendant labored under the misapprehension that his plea could be withdrawn.")

Finally, petitioner asserts that he was denied the effective assistance of counsel, resulting in an involuntary guilty plea. He is critical of his counsel below, arguing that during the plea colloquy, petitioner's counsel asked the circuit court to run both the robbery and malicious wounding sentences concurrently, stating, "I think it's overkill if you were to run the – the crimes consecutively – the sentencing consecutively. I believe that the State will recommend – recommend a concurrent sentence. I join that recommendation. I think that ten years is enough for the crime." Petitioner contends that counsel did not argue a ten-year sentence versus a life sentence, as it appears that counsel did not contemplate the peril facing petitioner beyond the prospect of a consecutive two- to ten-year sentence on top of the ten-year robbery sentence.

As this Court has found,

> [i]t is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and

may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.

Syl. Pt. 10, *State v. Triplett*, 187 W. Va. 760, 421 S.E.2d 511 (1992). We have also explained that "the preferred way of raising ineffective assistance of . . . counsel is to file a subsequent petition for a writ of habeas corpus raising the issue in the court below." *Watts v. Ballard*, 238 W. Va. 730, 735-36 n.7, 798 S.E.2d 856, 861-62 n.7 (2017) (internal quotations and citation omitted). Consequently, "we decline to address an alleged ineffective assistance of counsel claim in this direct appeal. The record has not been developed on this issue. This is an issue that must be developed in a habeas corpus proceeding." *State v. Richardson*, 240 W. Va. 310, 319-20 n.13, 811 S.E.2d 260, 269-70 n.13 (2018). For these reasons, we affirm the circuit court's October 3, 2019, sentencing order.

Affirmed.

**ISSUED:** December 7, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison